## NESBITT *vs.* PEARSON'S ADM'RS.

[ACTION ON PROMISSORY NOTE BY ASSIGNEE AGAINST MAKER.]

1. *Sufficiency of complaint in averment of plaintiff's ownership.*—In an action by the assignee against the maker of a note, an averment in the complaint, "that said sum of money mentioned in said note, with interest thereon, is now due to plaintiff," is a sufficient allegation of the plaintiff's ownership.

2. *Conditional note.*—A condition incorporated in a note, to the effect that it may be discharged by the delivery of specific articles within a given time, is for the benefit of the maker ; and if he fails to avail himself of it within the prescribed time, the note becomes absolute, and may be declared on, after maturity, according to its legal effect.

3. *Proof of plaintiff's ownership.*—In an action by the assignee against the maker of a note, the plaintiff is not required to prove his ownership, unless it is denied by a sworn plea.

4. *Competency of agent as witness for principal.*—In an action on a note given for the hire of a slave, by an assignee against the maker ; the defense being that the owner agreed to sell the slave to the defendant at the expiration of the term, for a stipulated sum including the hire, but afterwards failed and refused to comply with said agreement ; an agent, whom the defendant employed to procure the slave for him, and who took a bill of sale in his own name, is a competent witness for the plaintiff, although an action of detinue is pending against him, at the suit of the defendant, for the recovery of the slave.

5. *Abstract charge not presumed.*—Where the bill of exceptions does not purport to set out all the evidence, the appellate court will presume that an affirmative charge was not abstract.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. E. W. PETTUS.

THIS action was brought by William Pearson in his life-time, and afterwards revived in the name of his administrators ; and was founded on the defendant's promissory note, of which the following is a copy :

"$265. Twelve months after date, I promise to pay John T. Watson, or bearer, the sum of two hundred and sixty-five dollars, for the hire of a negro man, named Joseph, for twelve months. The above sum may be discharged with two hundred and eighty dollars in merchantable bar-iron, at five cents per pound ; to be delivered at the Kossuth forge. January 8th, 1852.

WILSON NESBITT."

The action was commenced on the 19th January, 1853. By the original complaint, the plaintiff claimed of the defendant $265, "as the assignee of a note executed by the defendant on the 8th January, 1852, payable to John T. Watson, or bearer, on the 8th January, 1853, and by said Watson assigned to the plaintiff"; which note, with the interest thereon, was alleged to be still unpaid. The complaint was afterwards amended, by the addition of another count, in these words: "The plaintiff claims of the defendant the further sum of $265, due on the following instrument, to-wit:" (setting out the note;) "and the plaintiff avers, that the defendant wholly failed to pay. said note on the maturity thereof; and said money mentioned in said note, with interest thereon, is now due to plaintiff." No pleas appear in the record.

On the trial, as appears from the bill of exceptions, the plaintiffs offered in evidence the note sued on, "which was neither endorsed, nor assigned in writing." The defendant objected to its introduction, "on the ground that it did not show any right of action in the plaintiff s;" but the court overruled their objection, and they excepted. The defendant then read in evidence an instrument of writing in these words:

"On the 8th January, 1852, I hired to Wilson Nesbitt, by my agent, John T. Watson, my negro man by the name of Joseph, a hammer-man, for twelve months from date, for which I hold his note for $265. Now be it known, that I, D. R. Watson, do hereby agree to sell the said negro unto the said Watson at the expiration of his time, for $1,000, including his hire, should the said Nesbitt conclude to take the boy after trying him. Witness my hand and seal this 2d January, 1852.

D. R. WATSON, [SEAL.]"

It was proved, that this instrument was in fact executed on the 2d February, and was dated in January by mistake; that the negro belonged to said D. R. Watson, and went into Nesbitt's possession under the contract of hiring, and remained in his possession until a few days after the expiration of the term; "that said D. R. Watson, some time during the year 1852, after the execution of

the foregoing instrument, sold and delivered the note sued on to the said Pearson, and also bargained and sold said negro to him; that said Pearson, in company with said D. R. Watson and John T. Watson, on the 4th January, 1853, came to the defendant's premises, where the slave was, and notified the defendant that he had bought said slave from D. R. Watson, and that he claimed the slave as his own under said purchase; that the defendant then refused to acknowledge said Pearson's title to the slave, and declared that he had determined to buy and keep said slave under said written contract executed by D. R. Watson; that said Pearson, after some conversation between all the parties, then agreed to release all right, title and claim to said negro, in consideration of a promise by D. R. Watson to pay him $50; that Nesbitt then proposed to pay said D. R. Watson the sum stipulated in said written instrument, and $150 in iron, (or, as stated by another witness, one ton of iron,) if said Watson would agree to let him have the negro; that it was thereupon agreed between said D. R. Watson and Nesbitt, that Watson would sell said negro to Nesbitt on the terms proposed, (the ton of iron to be delivered, at a certain place named, some months thereafter,) and that they should meet at a certain place and time, not more than five or six days thereafter, when and where Watson should receive said sum of $1,000, should give up Nesbitt's said note for the hire, and should execute to him a bill of sale for said slave; and that the defendant appeared, at the time and place appointed, with $1,000 in bank-bills, but said Watson failed to appear, and no one appeared for him. Other testimony tended to show, that the only object of the parties, in appointing a time and place of meeting as above stated, was that Nesbitt might pay, and Watson receive the purchase-money for said slave; and other testimony tended to show, that it was agreed between the parties that, at said place and time of meeting, Watson should receive the sum of $1,000 from Nesbitt, and should deliver to him the note sued on, and should execute to him a bill of sale for the slave, and should also deliver to him a writing by which Pearson

should relinquish all his interest in said slave. It further appeared that said Pearson and D. R. Watson, a few days after said term of hiring expired, went upon the defendant's premises, in his absence, and, without his knowledge or consent, took away said slave; and that Pearson retained the slave in his possession until the sale hereinafter mentioned."

" The plaintiffs then proposed to examine one Newton Smith as a witness, to whose competency the defendant objected. Said Smith, being examined on his *voir dire*, swore, that the defendant, in the year 1854, applied to him to act as his agent in purchasing said slave from Pearson, because, as defendant stated, Pearson would not sell the slave to him directly; that he consented to act as such agent, and was authorized by defendant to give $1100 for the slave, including the note here sued on; that Pearson refused to sell the slave on these terms, and defendant then authorized him (witness) to buy the slave on such terms as he could, and told him to consult with General Scott about the purchase, who would advise him for defendant, and promised to refund whatever sum he might pay for the slave; that witness accordingly bought said slave from Pearson, as agent for defendant, at the price of $1100, which sum he paid to said Pearson, and took a bill of sale to himself; that he immediately carried the slave to the iron-works where defendant was engaged in business, and, finding the defendant absent, and believing that he and General Scott were partners in the business, sold and delivered the slave to said Scott, at the price of $1100, but did not receive payment; that defendant, when informed of the sale to Scott, was dissatisfied with it, and told witness that he and Scott were not partners; that witness bought the slave for defendant, and took the title to himself to secure the re-payment of the money advanced by him; that the defendant afterwards brought suit against Scott for the slave, but Scott died pending the suit; that witness and Scott's personal representative afterwards rescinded the trade, and witness thus obtained the possession of the slave again; that he then offered to let defendant take the slave, if the latter would refund to

him the amount paid to Pearson; that defendant refused to pay said sum, and claimed that witness ought to allow him the value of the slave's hire while in Scott's possession; that witness refused to deliver said slave to defendant, unless defendant would repay the $1100; that defendant thereupon brought an action of detinue against him for the slave, which action is still pending; that witness did not buy said slave for himself, but as the friend and agent of defendant; that he did not want the slave, but wanted the money which he had advanced; and that he had always been, and was now, ready and willing to deliver said slave to defendant, provided defendant would pay him the money advanced to Pearson. The defendant thereupon objected to the competency of said Smith as a witness, on the ground that he was interested in the suit, and that the verdict and judgment would be evidence for him in the said action brought against him by Nesbitt. The court overruled the objection, and allowed the witness to testify for the plaintiffs; to which ruling the defendant excepted."

"The court charged the jury, among other things, that the written instrument executed by D. R. Watson to the defendant on its face imported a consideration, and that it was binding on said Watson, if supported by a consideration; but that the jury should look to all the evidence in the case, and if they found that said writing was executed without any consideration, then said writing was voluntary, and not binding on Watson. To this charge the defendant excepted, and then requested the court to instruct the jury, that the writing sued on did not show any right of action in the plaintiffs, and that they were not entitled to maintain a suit thereon in their own names; which charge the court refused to give, and the defendant excepted."

All the rulings of the court to which exceptions were reserved, as above stated, are now assigned as error.

BROOKS & VARY, for the appellant.

L. W. GARROTT, contra.

STONE, J.—There was no error in admitting the note in evidence under the complaint. The second, or amended count, describes it accurately; and the concluding sentence, "and said money mentioned in said note, with interest thereon, is now due to plaintiff," is a sufficient averment of ownership under the Code, § 2129.—Letondal v. Huguenin, 26 Ala. 552; Code, p. 552.

[2.] Neither is there anything in the argument based on the condition in the face of the note, in the words following: "The above sum may be discharged with two hundred and eighty dollars in merchantable bar-iron, at five cents per pound, to be delivered at Kossuth forge." Such conditions are inserted for the benefit of the maker; and when he neglects to avail himself of them, they cease to have any binding effect on the holder. They are but a privilege, which the promisor forfeits by failing to avail himself of, before or at maturity. At any time after maturity, a note thus framed becomes an absolute promise to pay money; and a complaint, which so describes it, conforms to its legal effect, and is sufficient.—Plowman v. Riddle, 7 Ala. 775; McRae v. Raser, 9 Porter, 122; Love v. Simmons, 10 Ala. 113.

[3.] It was not necessary for plaintiff to prove his ownership of the note, in the absence of a sworn plea denying that fact.—Rule of practice adopted at January term, 1853; rule book, p. 3; 28 Ala. viii.

[4.] We are not able to perceive any ground on which to hold that the witness Newton Smith was incompetent to testify for plaintiff. The verdict and judgment in this case could not be evidence for Smith in another suit.—Code, § 2302.

[5.] The affirmative charge given may be obnoxious to criticism. It is somewhat obscure, and its tendency may have been to mislead the jury. Still, as an abstract legal proposition, we can not say it affirmed anything prejudicial to the rights of the appellant. The bill of exceptions does not assume to set out all the evidence; and we are not at liberty to presume the existence of evidence, as the basis of a reversal: on the contrary, it is our duty to presume there was evidence to justify the charge.

See Partridge v. Forsyth, 29 Ala. 200; Doe *ex dem.* v. Goodwin, 30 Ala. 242.

Under strict rules, it may be that the agreement, bearing date January 2, 1852, is but an offer by Watson to sell, and not a contract until accepted by Nesbitt.—See Falls v. Gaither, 9 Por. 605; Addison on Contr. 24; Chitty on Contracts, 9; Findley v. Bank, 6 Ala. 244.

We find nothing in this charge on which to reverse.

The charge asked was properly refused, for reasons stated above.

There is no error in the record prejudicial to the appellant, and the judgment is affirmed.