# Thompson *v.* Harvey.

| 86　519|
|103　133|

### *Statutory Detinue for Personal Property.*

1.　*Sale or exchange of personal property; rescission for fraud, or breach of warranty.*—On a sale or exchange of personal chattels, with express warranty, which is broken, the purchaser or party injured may, as in case of fraud, offer to restore the property and claim a rescission, thereby reinvesting himself with his original title, on which he may maintain an action of detinue; and an express stipulation by the defendant, that in the event of a breach of warranty on his part, he would either restore the property which he received in the exchange, or pay its appraised value, being intended for his benefit and advantage, is waived unless claimed when plaintiff offers to rescind, and does not affect plaintiff's right to sue for his property.

2.　*Warranty, and patent defects.*—Ordinarily, a general warranty of soundness does not cover patent defects, such as are discernible by the eye and comprehensible by the purchaser; but, when there is uncertainty and difficulty in ascertaining the extent and effects of a patent defect, such as an enlargement of the withers of a horse, the purchaser may protect himself against it by an express warranty.

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

This action was brought by Seth Harvey, againt Joseph U. Thompson and N. Q. Thompson, to recover two oxen, with yokes, chains, &c.; and was commenced in a justice's court, in May, 1888. On the trial in the City Court, to which the case was removed by *certiorari*, it appeared that the property sued for, with another yoke of oxen, was traded by the plaintiff to the defendants, about the 1st April, 1888, in exchange for a horse, two cows, and $30.00 in money; that the horse was valued in the trade at $100; that $8.00 of the money was paid in cash, and the balance several days afterwards; and that the plaintiff afterwards claimed a rescission, on the ground that the horse was not sound as warranted. The plaintiff thus testified in his own behalf: "Thompson said that the horse was perfectly sound in every respect, and perfectly gentle; . . that if he was not just as represented, he would either rue the trade, and give me back my property, or take him back, and give me his appraised value, which was $100. I got on the horse, and rode him, and he seemed to ride very nice. After Thompson left my camp, I noticed that the withers of the horse were very

[Thompson v. Harvey.]

thick; and I got on him, followed Thompson, and tried to get him to rue back, as I was then dissatisfied with the trade. I told him that I believed there was something the matter with the horse, for his withers did not look right; and I offered him $5.00 to rue back. He said, that he would not rue back for any small sum; that it was the natural shape of the horse, and he was all right; and for me to keep him a while, and if he was not all right, and just as represented, he would rue back the trade, or give me back the value at which the horse was taken in the trade. Next day I found the horse with his withers running from a sore, or swollen place." He testified, also,. that when he went to meet Thompson, "several days after the trade," to get the balance of the cash payment, he again offered to rescind, proposing to give a cow and calf, worth $35.00, if Thompson would let him have back his property; that Thompson refused to do so, and again repeated his representations and promises. N. Q. Thompson, with whom the trade was made, testified on behalf of the defendants, "I never guaranteed the horse;" and as to the plaintiff's subsequent offers to rescind, and his own refusals, his testimony was not materially variant from that of the plaintiff.

"The court charged the jury, among other things, substantially as follows: If the jury believe from the evidence that there was a special warranty made by the defendant to the plaintiff, at the time of making the trade, that the horse was sound, and it proved to be untrue; then plaintiff could recover in this action, and was not required to examine said horse, but might rely on said warranty, if such was made; that although the defects in the horse may have been plain and perceptible, yet, if the plaintiff relied on a special warranty, he could do so, and now maintain this action, if the jury believe that said special warranty has been broken. To the giving of this charge the defendants excepted. The court further charged the jury in full, in explanation of the law applicable to the case; to which no exception was taken. The defendant then asked the following charge in writing," duly excepting to its refusal: "If the jury believe from the evidence that the defects in the horse, relied on to procure a rescission of the trade in this case, were open and perceptible, so that the plaintiff could have seen them on examination; the doctrine of *caveat emptor* would apply, and the plaintiff could not recover in this case."

VOL. LXXXVI.

[Thompson v. Harvey.]

The charge given to which exception was reserved, and the refusal of the charge asked, are now assigned as error.

McINTOSH & RICH, and W. E. RICHARDSON, for appellants, cited Benjamin on Sales, 3d ed., 617; *Tabor v. Peters,* 74 Ala. 90; *Sledge v. Scott,* 56 Ala. 202; *Livingston v. Arrington,* 28 Ala. 424; *Young v. Arnize,* at present term.

GREG. L. & H. T. SMITH, *contra.*

CLOPTON, J.—1. The first question in this case is, whether the plaintiff can maintain an action for the recovery of specific property. The transaction, out of which the controversy grew, was an exchange of property by the parties. We must assume, as was evidently found by the jury, that defendants warranted the soundness of the horse, which they delivered to plaintiff in exchange for the property sued for, and that the warranty was broken. Whatever may be the conflict in the authorities, it may be regarded as settled in this State, that the remedy of a buyer, to avoid a contract for the breach of a warranty, is not restricted to cases where the warranty is fraudulent. This rule was settled as long ago as the decision in *Barnett v. Stanton,* 2 Ala. 181, in which it was said: "An offer to return the chattel in a reasonable time, on the breach of a warranty, or where fraud has been practiced on the purchaser, is equivalent, in its effect upon the remedy, to an offer accepted by the seller, and the contract is rescinded." This rule seems to be sustained by the current of the later authorities in this country, and to be founded on sound principle. It would be a defect in the law, if a purchaser of property upon a warranty, which is broken, should be required to retain it, though totally unsuitable to the purposes for which he obtained it, and be put to his action for damages. In this case, there were special stipulations as to the remedy, in the event of a breach of the warranty. The defendants agreed, if the horse was not as represented, that they would either rescind the contract, and restore the property which plaintiff delivered to them in the exchange, or pay the appraised value of the horse. The latter stipulation was clearly for the benefit of defendants, and was intended to provide for any contingency, which might render the restoration of the property impracticable. The settled rule is, that on the return, or offer to return the horse, by plaintiff, the defendants forfeited the privilege

[Thompson v. Harvey.]

inserted for their benefit, if they neglected to avail them-selves of it. In such case, it ceased to be binding on plain-tiff, and the contract became absolutely rescinded.—*Nesbit v. Pearson*, 33 Ala. 668. The plaintiff, having rescinded the contract, is entitled to maintain detinue for the property, which he delivered to defendants in exchange for the horse. *Marston v. Knight*, 29 Me. 341.

2. The only remaining question arises on a charge re-quested by defendants, to the effect, that if the defect, on which plaintiff claimed a rescission of the contract, was plain and perceptible, so that plaintiff could have seen it on examination, the doctrine of *caveat emptor* would apply, and plaintiff could not recover. The court had already, in the general charge, instructed the jury that, though the defect was plain and perceptible, yet plaintiff had a right to rely on the special warranty, and if he did so, and it was broken, he could maintain the action. Ordinarily, a general warranty does not cover defects which are manifest and ob-vious to all observers; such as are discernible by the eye, and comprehensible by the purchaser.—*Livingston v. Ar-rington*, 28 Ala. 424; *Tabor v. Peters*, 74 Ala. 90. In 2 Benj. on Sales, § 938, the rule is thus stated: "A general warranty does not usually extend to defects apparent on sim-ple inspection, requiring no skill to discover them." But warranties may be extended to defects though patent. Where there is uncertainty and difficulty, and the represen-tation is not glaringly inconsistent with the obvious condi-tion and quality of the property, or where the results of the known defect are not apparent at the time, and could not have been reasonably foreseen, the buyer may rely on the warranty or representation, and not on his own judgment. 1 Whart. Contr. § 245; *Marshall v. Drawhorn*, 27 Ga. 275; *McCormick v. Kelly*, 28 Minn. 135.

The bill of exceptions states that the court charged the jury fully in explanation of the law applicable to the case, to which no exception was taken. Considering the portion of the general charge excepted to, in connection with a full and complete charge as to the law applicable to the case, we interpret it as intended merely to assert, that on a breach of the warranty, the plaintiff could maintain this form of action, and was not put to an action for damages. The charge requested by defendants must be construed in ref-erence to the tendencies of the evidence. It appears that the apparent defect consisted in the thickness of the with-

ers. The evidence tends to show, that immediately on discovering it plaintiff followed the defendant, who made the exchange, and offered to rescind the contract; but kept the horse on his representation that it was his natural shape, and the reiteration of the warranty. It was for the jury to determine whether the defect was so plain and obvious, as not to require any skill to discover its nature, or to foresee its results. If the representation was made with the intention to obscure observation of the defect, and to prevent inquiry as to its results, and was calculated to mislead, plaintiff had a right to rely on the representation, without making further examination, or prosecuting further inquiry. *Brown v. Freeman*, 79 Ala. 406. The charge requested applied the doctrine of *caveat emptor* to all cases of defects plain and perceptible on examination, implied the duty to examine under all circumstances, and ignored the limitations and qualifications of the general rule as to patent defects. It was misleading in its tendency.

Affirmed.