19 So.2d 521

### SILLS v. SILLS.
### 7 Div. 771.

Supreme Court of Alabama.

Oct. 11, 1944.

Rehearing Denied Nov. 16, 1944.

166

Merrill, Merrill & Vardaman, of Anniston, for appellee.

Chas. Douglass, of Anniston, and Ben F. Ray, of Birmingham, for appellant.

**STAKELY, Justice.**

This is an appeal from a final decree of the equity court dismissing appellant's bill for divorce and on the cross-bill of appellee granting her a divorce from appellant from the bonds of matrimony. The decree also makes certain allowances to appellee for alimony and counsel fees. The appellant contends that (1) the court was without jurisdiction to grant the divorce, (2) that the decree of divorce was not justified by the evidence, and (3) that the allowances for alimony and counsel fees were improper.

The decree of divorce was based on voluntary abandonment. Appellant insists that the court had no power to grant the decree of divorce because appellee at best only alleged and proved a voluntary abandonment of one year next preceding the filing of the bill.

On September 4, 1943, appellant filed an original bill for divorce from appellee, charging voluntary abandonment for one year next preceding the filing of the bill. On September 20, 1943, appellee filed an answer and cross-bill claiming alimony and counsel fees. On September 29, 1943, appellee amended her answer and cross-bill, praying for a divorce on the ground of voluntary abandonment of one year next preceding the filing of the bill of complaint. There is evidence tending to show voluntary abandonment of appellee by appellant on or about June 17, 1942.

This presents for our review the scope and purpose of the act of the legislature, General Acts 1943, page 425, amending § 20, Title 34, Code of 1940, which became effective July 10, 1943, and in pertinent part reads as follows:

"An Act to amend Section 20, Title 34, Code 1940.

"Be it enacted by the Legislature of Alabama:

"Section 1. That Section 20, Title 34, Code of Alabama, be and the same is hereby amended so as to read as follows: Section 20. Divorce; By What Court And On What Grounds Granted.—The Circuit Court in equity has power to divorce persons from the bonds of matrimony, upon bill filed by the aggrieved party, for the causes following: * * * 3. For voluntary abandonment from bed and board for one year next preceding the filing of the bill. * * *"

It is true that the basis for the divorce decree in the case at bar rests only on a voluntary abandonment of one year next preceding the filing of the bill. If the decree is valid, we must hold that the amending act became effective instanter on the date of its approval, July 10, 1943, and further that the act is retroactive as well as prospective in its application. Obviously if the amending act is prospective only in its operation and effect, then the bill could not be filed until the lapse of one year from its effective date.

In support of his position, appellant relies on the decision of this court in Barrington v. Barrington, 200 Ala. 315, 76 So. 81. In that case, the statute there under consideration granted the wife a divorce when she, without support from him, had lived separate and apart from the bed and board of her husband for a period of five years next preceding the filing of the bill. In that decision, this court declined to give the statute a retroactive application because the statute under consideration in that case made marital conduct, occurring prior to the act, a ground for divorce, when it was not such a ground for divorce at the time such conduct took place. State v. Brown Service Funeral Co., 236 Ala. 249, 253, 182 So. 18, 21.

In Barrington v. Barrington, supra [200 Ala. 315, 76 So. 83], this court, in dealing with the retroactive application of divorce statutes, and especially the statute there under consideration, said:

" * * * Mr. Bishop, after reviewing some of the older cases, including Cole v. Cole, supra [27 Wis. 531], concludes:

" 'It being the primary object of the divorce suit to regulate the order of society, and purify the fountains of morality, while still as between the parties it is a private controversy—and the proceeding being in the highest remedial, so that the spirit and reason of the divorce statutes should be pre-eminently the guides to their interpretation—we should, in all cases where the legislative intent is not plain in the words, prefer the construction which makes the statute applicable to past offenses, the same as to future.' 1 Bish. on Mar. and Div. § 102.

"But this view, as shown by the context (section 101), is founded solely on the theory of a delictum by the spouse against whom the divorce is authorized—i. e., a guilty breach of marital duty. Hence, conceding the merit of the author's opinion, it would not embrace a statute like that one now under consideration, for the reason that the divorce it authorizes in favor of the wife is not predicated on any delictum or marital breach by the husband. * * *"

In the Barrington case there was no delictum or breach of marital duty by the husband prior to the passage of the act. Under the statute involved in the Barrington case, the wife by her own acts could create a ground for divorce without any wrong committed by the husband. In the case at bar there was a delictum or breach of marital duty prior to the adoption of the act and therein lies the difference in the two cases. If the allegations of the cross-bill of appellee are considered as true and they were so found to be by the trial court, appellant voluntarily abandoned appellee prior to the effective date of the above amending act and in so doing was guilty of a breach of marital duty, under the then existing law. True, under the old law, the breach of marital duty did not ripen into a cause of action until the lapse of two years, but the voluntary abandonment was nevertheless a breach of marital duty.

Since the foregoing quotation from the decision in Barrington v. Barrington, supra, indicates that an act of the character under consideration in the case at bar is remedial, it is worth noting what this court said generally in that decision relative to remedial statutes:

"Remedial statutes—those which do not create, enlarge, diminish, or destroy vested rights—are favored by the courts, and their retrospective operation is not obnoxious to the spirit and policy of the law.

"But a statute which gives a new legal effect to conduct or conditions occurring or existing prior to its enactment, thereby imposing upon any person unanticipated disabilities or alterations of legal status, is retrospective in a sense which is odious to the law, and, as to such operation, is strongly disfavored by the courts, even though it does not offend the Constitution by impairing the obligation of a contract or by creating a crime or punishment ex post facto. This disfavor has everywhere found expression in a rigorous rule of construction which denies retroactive effect to such a statute unless by its express terms, or by unmistakable implication, the Legislature must have so intended." Barrington v. Barrington, 200 Ala. 315, 76 So. 81, 82.

See also 59 C.J. p. 1106, § 657.

In this connection it is interesting to note the dissenting opinion of Mr. Justice McClellan, wherein he held that the statute under consideration in the Barrington case was remedial and, therefore, a retrospective operation of the statute was not obnoxious. Mr. Justice Somerville, who wrote the majority opinion, wrote a further opinion concurring in various respects with the opinion of Mr. Justice McClellan and in doing so, said among other things:

"I further agree with Justice McClellan in the judicial principle that the power of the Legislature over marriage and divorce is as to its origin and basis 'remedial and conservative.' "

While Mr. Justice Somerville adhered to the view that the act under consideration in the Barrington case was not remedial, he did so on the idea that remedial legislation did not consist in making innocent conduct already past, a ground for divorce.

But what was the obvious intention of the legislature in adopting the amending statute set forth above, as shown by its necessary implications? Barrington v. Barrington, supra; Hawkins, Tax Collector, v. Peoples Finance & Thrift Co., 219 Ala. 558, 122 So. 650.

If the theory of appellant is correct and the statute has prospective application only, then it follows that the legislature intended to provide that no divorce could be granted for voluntary abandonment until the expiration of a year from the effective date of the amending act. And yet voluntary abandonment as a ground for divorce, except as to its duration, was by the amending act "affirmed and continued in force without interruption." Allgood, Auditor, v. Sloss-Sheffield Steel & Iron Co., 196 Ala. 500, 71 So. 724, 725. Can it be that the legislature intended to continue in force and effect voluntary abandonment as a ground for divorce, a ground which had existed for many years in this state, and yet prevent divorce on that ground for a year? Did it intend that the spouse wronged in this respect, perhaps by voluntary abandonment for many years, must wait out another year before filing suit? Can it be that the legislature intended to grant to one derelict in marital duty in this respect, immunity from suit for a whole year? We do not consider that affirmative answers to these questions are reasonable and just conclusions and that the legislature so intended.

"This would not be giving the statute a sensible application, but one leading to an unjust and absurd conclusion, which, if possible, is to be avoided in construing legislative intention in the interpretation of statutes. In re Chapman, Petitioner, 166 U.S. 661, 17 S.Ct. 677, 41 L.Ed. 1154." Birmingham Ry., Light & Power Co. v. Green, 4 Ala.App. 417, 58 So. 801, 802.

See also Abramson v. Hard, 229 Ala. 2, 7, 155 So. 590.

And so we conclude that the statute was properly construed by the lower court, so as to give it retroactive application, not only because the statute is in the nature of remedial legislation, but also because such construction was clearly intended by the legislature, as shown by the necessary implications. The court had the power to render its decree.

Error is predicated on the action of the court in granting appellee a divorce, and in allowing her alimony and counsel fees. The marriage appears to have proved a tragic failure. No good can come of presenting a detailed discussion of the evidence. Suffice it to say that appellee's charge of voluntary abandonment of one year by appellant is well supported by the evidence. The court acted correctly in granting appellee a divorce from the bonds of matrimony on her cross-bill.

To the bill brought by appellant, appellee on September 20, 1943, filed an answer de-

nying the alleged ground for divorce, and a cross-bill claiming alimony pendente lite and counsel fees. On the hearing on the claim for alimony pendente lite and counsel fees, the court awarded $40 a month as alimony pendente lite and counsel fees in the amount of $100 payable in monthly installments of $20 each. The records of this court show that a petition to this court for mandamus to vacate the decree was denied by this court. Two installments, aggregating $40, were paid on the attorney's fees and on September 29, 1943, appellee amended her answer and cross-bill, charging appellant with voluntary abandonment of one year, and praying for a divorce, both temporary and permanent alimony and counsel fees. The answer denied appellant's charge of voluntary abandonment.

In its final decree, the court awarded appellee $50 a month as permanent alimony and $200 as attorney's fees, which included the $100 previously awarded. There is an unpaid balance of $160 on the attorney's fees, which under the decree is payable in monthly payments of $30 each. The decree awarded possession of the home and the furniture therein temporarily to appellee, possession to continue "until further ordered by the court." The decree contained the provision that "the cross-complainant shall pay all taxes, insurance, repairs and upkeep of said property."

The court further found that there were two mortgages on the home, one to Home Owners' Loan Corporation on which there is an unpaid balance of $670.91, and one to the First National Bank of Atlanta, on which there is an unpaid balance of $152.78, or a total of $823.69. In view of the fact that appellee had paid or her children had paid for her the sum of $234.86 on the mortgage indebtedness, the court established a lien on the property in favor of appellee for the amount so paid and provided that she should have lien for all future payments which she might make on the mortgage indebtedness.

Appellant and appellee were married December 29, 1909. He abandoned her June 17, 1942. Each was fifty-one years of age. There were four children, all over the age of twenty-one, except the youngest, a girl, who became of age March 26, 1944. According to appellant the furniture is worth from $800 to $1,000. Appellant owns a second-hand car worth $165 and the home, which is a six-room house, valued at from $3,500 to $4,000. Appellant is a postman and receives a salary from the Government of $200 a month.

Appellee has no separate estate. She has no income, except from the rent of rooms in the home. Tendencies of the evidence show that she is in poor health, is unable to work except around the house, and has no means of earning a livelihood. Her youngest child lives with her. Appellant contributed nothing to the support of his wife and minor child for twelve months prior to the hearing before the court, and during that time paid nothing on the mortgage indebtedness. The monthly payments due on the mortgages are $11.31 to the Home Owners' Loan Corporation and $15.22 to the First National Bank of Atlanta.

In addition to the misconduct of the appellant in abandoning his wife, there are tendencies of the evidence which show other conduct on his part of a highly reprehensible nature. The parties were before the court in person and the testimony was heard orally before the court. We have often said that under these circumstances we would not set aside the decree of the lower court unless it is palpably wrong. Cairnes v. Cairnes, 211 Ala. 342, 100 So. 317.

Recently we had occasion in the case of Ex parte Austin, 245 Ala. 22, 15 So.2d 710, to pass on the meaning and effect of § 30, Title 34, Code of 1940, which is the statute now dealing with temporary alimony. This decision also deals with allowances for counsel fees. There is no need to repeat here what was there said. The court was not in error in its decree relating to temporary alimony and counsel fees. It was in a position to judge the nature and extent of the services performed by the attorneys. We are not convinced that we should not abide by the findings of the lower court.

§ 32, Title 34, Code of 1940, is as follows:

"If the divorce is in favor of the wife for the misconduct of the husband, the judge trying the case, shall have the right to make an allowance to the wife out of the husband's estate, or not make her an allowance as the circumstances of the case may justify, and if an allowance is made it must be as liberal as the estate of the husband will permit, regard being had to the condition of his family and to all the circumstances of the case."

170

We cite some of our cases which discuss and apply the familiar rules which offer a guide to the trial court in fixing permanent alimony: Sharp v. Sharp, 230 Ala. 539, 161 So. 709; Adams v. Adams, 229 Ala. 588, 159 So. 80; Phillips v. Phillips, 221 Ala. 455, 129 So. 3; Waldrep v. Waldrep, 231 Ala. 390, 165 So. 235; Thomas v. Thomas, 233 Ala. 416, 172 So. 282; Coffey v. Cross, 185 Ala. 86, 64 So. 95; Smith, Adm'x v. Rogers, 215 Ala. 581, 112 So. 190. We note especially that under the foregoing statute, which is the applicable statute in this case (Gibson v. Gibson, 203 Ala. 466, 83 So. 478), much is left to the discretion of the trial court. This discretion, however, is judicial, not arbitrary, and is subject to review on appeal. Thomas v. Thomas, supra; Sharp v. Sharp, supra.

Under the decree of the lower court, subject to further orders of the court, appellee is allowed the use and possession of the furnished home. Outside the more or less uncertain return from the rent of rooms, appellee has no means of livelihood. Out of the allowance of $50 per month, she must pay the installments as they mature each month on the mortgage indebtedness if she wishes to prevent foreclosure, and in addition thereto, she must pay taxes, insurance and repairs on the house. In view of the misconduct of appellant (Adams v. Adams, supra), plus his earning capacity (Thomas v. Thomas, supra), and the other circumstances in the case, we are not willing to say that the court abused its discretion and was in error. 27 C.J.S., Divorce, § 232, p. 948. If the circumstances of the parties should substantially change, the court can make further orders relating to the home and furniture, and also may make such revisions in the monthly allowance to appellee as the substantially changed circumstances of the parties may warrant. Epps v. Epps, 220 Ala. 592, 126 So. 862; Wells v. Wells, 230 Ala. 430, 161 So. 794. To effectuate this end, the decree of the lower court, which provides that "said monthly payments shall not terminate until the death or remarriage of respondent and cross-complainant," is modified so as to make the monthly payments of permanent alimony subject to the further orders of the court. See Rochelle v. Rochelle, 235 Ala. 526, 179 So. 825.

One matter remains to be mentioned. The final decree providing for $50 per month, as permanent alimony, and the payment of counsel fees in amount of $200, was entered on December 4, 1943. When the appeal was taken, appellant executed a supersedeas bond, staying the obligation to make these payments pending the outcome of the appeal. We are informed by counsel in brief that thereafter on February 7, 1944, the trial court on petition of appellee made an order allowing temporary alimony pending the appeal and an additional amount for counsel fees for services on this appeal. The decree of February 7, 1944, and the proceedings on which it is claimed to be based, are not in the record before us and are not within the scope of this appeal. Obviously, we will not on this appeal consider the same or assignments of error based thereon.

The decree of the lower court will be modified as herein set forth, and in all other respects it is ratified and approved.

Modified and affirmed.

THOMAS, BROWN, FOSTER, LIVINGSTON, and SIMPSON, JJ., concur.