201 So.2d 396

**Rhonwyn M. OWENS**

v.

**Robert W. OWENS.**

**3 Div. 235.**

Supreme Court of Alabama.

June 22, 1967.

Rehearing Denied Aug. 17, 1967.

 

Capell, Howard, Knabe & Cobbs, Montgomery, for appellant.

Matthis W. Piel, Montgomery, for appellee.

HARWOOD, Justice.

This is an appeal from a decree of divorce in favor of the wife. Actually the only matters involved in this appeal relative to the action of the lower court is the alimony awarded, or property settlement.

The cause originated by a bill filed by Robert W. Owens, the husband, seeking a divorce from his wife, Rhonwyn Owens. For the sake of clarity we will hereinafter refer to the parties as Robert and Rhonwyn. Rhonwyn filed an answer to the bill and also filed her own bill of complaint seeking a divorce from Robert Owens, and Robert filed his answer to said bill.

The court was of the opinion that the two causes should be combined and each party concurred in this procedure.

The evidence introduced below shows that the parties were married on 4 June 1961, and were divorced in March 1962. They remarried in May of 1963. This divorce action pertains to this second marriage.

Both parties must have regretted this remarriage since it was beset with nothing more than quarreling and disagreements and extreme unpleasantness.

At the time Robert and Rhonwyn were originally married each had been divorced, and each had two children by their former marriages. She received $77.00 per month for the support of these children from their father. In addition, Rhonwyn testified that she had been married for a few months when he was 16 years old. One child was born to Robert and Rhonwyn.

Prior to the first marriage between these two parties, Robert gave Rhonwyn $1,500 with which. to make a down payment on a house. At this time Robert was married and living with his then wife. The background of this transaction relative to the

house is illustrated by Rhonwyn's testimony in the present proceedings as follows:

"I had a girl living with me and she had been talking behind my back and we had a dispute and I needed a cheaper place to live and Bob wanted me to get a house so that he could come and go as he pleased and he did make it possible to get the house but I tried to break up with him because he was not divorced from his wife and we had looked at the house and I told him I didn't want it and I didn't want to be obligated to him and he told me if I did not take the money I would never see him again and that he loved me and was going to get a divorce and marry me and I found out later when he told me he was not living with his wife that they were not living as man and wife * * *"

At any rate, Robert turned over to Rhonwyn $1,500 with which a down payment was made on a house located at 157 West Woodland Street in the City of Montgomery. This transaction took place in 1960, and title was taken in Rhonwyn's name. Rhonwyn testified that Robert had repeatedly asked that the title to this house be changed to "both their names" but she had always made the excuse that it would cost money to do this and it had never been done.

After Robert and Rhonwyn were married they lived in this house for about a year, and Robert made the monthly payments thereon.

Thereafter the house was rented and the rental payments were sufficient to take care of the monthly installments due on the house.

After their first divorce Robert and Rhonwyn contemplated remarriage, and prior to their remarriage they purchased a house located at 1713 Longmeadow Drive in the City of Montgomery. Robert made the down payment on this house, and to this conveyance Robert testified that the title was "in the two of us." Rhonwyn testified that the title was made to them "jointly."

Upon their remarriage, subsequent to the purchase of this second house, Robert and Rhonwyn moved into it.

The evidence also shows that Robert's two children by his first marriage lived with his mother. Rhonwyn's two children by her first marriage lived with Robert and Rhonwyn. The evidence further shows that Rhonwyn has always been violently opposed to any association between the child born to them and the two children of Robert's first marriage. It also appears that Rhonwyn's children have shown considerable disrespect for Robert, probably due to the encouragement of Rhonwyn.

At the conclusion of the hearing the court entered a decree denying Robert's bill of complaint but granting a decree of divorce to Rhonwyn on her complaint. The custody of the child of Rhonwyn and Robert was awarded to Rhonwyn subject to visitation rights by Robert as provided in the decree. The court awarded $37.50 per month for the support of this child.

The house at 157 West Woodland Street was awarded in fee simple to Rhonwyn.

In connection with the award of this house, counsel for appellant argues that no resulting trust could have arisen in favor of Robert even though he had advanced purchase money for the house, since no resulting trust is created in favor of the husband under such conditions, but a gift to the wife is presumed to have been made. Roubicek v. Roubicek, 246 Ala. 442, 21 So.2d 244; Marshall v. Marshall, 243 Ala. 169, 8 So.2d 843, and that in effect the court merely awarded to Rhonwyn what was already hers.

The fallacy of this argument is that at the time of the purchase of the house on West Woodland Street, Rhonwyn and Robert were not husband and wife, and Robert was married and living with his then wife and two children. Under Rhonwyn's

own testimony, this house was apparently purchased for the purpose of affording a convenient trysting place for Robert and Rhonwyn and the transaction was meretricious in its inception.

One who comes into equity must do so with clean hands, and equity will not aid one in extracting himself or herself from hurtful consequences when his or her acts are reprehensible and directly connected with the subject matter of the litigation. Hair v. Beall, 274 Ala. 699, 151 So.2d 613.

We hold that under the facts disclosed as to the purchase of the house on West Woodland Street, Rhonwyn is in no position to complain of the court's actions in the premises, which in effect held that the paper title to said house was not controlling in settling the property rights of the parties.

The court further held that the house located on Longmeadow Drive should be the property of Robert, and that the one-half undivided interest with survivorship rights belonging to Rhonwyn, should be divested out of her and into Robert, and Rhonwyn was directed to execute a deed conveying her interest in this house to Robert, who was to assume and pay the balance of any mortgage or mortgages on the house.

On this appeal counsel for Rhonwyn contends that this portion of the court's decree is erroneous under the doctrine of Bernhard v. Bernhard, 278 Ala. 240, 177 So.2d 565.

In *Bernhard* the husband and wife took title to a home as joint tenants with right of survivor. The couple became estranged and the husband filed a bill seeking to have the home sold for division. The lower court ordered the property sold for division. In reversing and rendering the decree of the lower court, this court held that while joint tenancies as known at common law have been abolished, neverthe-less under the provisions of Section 19, Title 47, Code of Alabama 1940, the parties may create a tenancy in common during the joint lives of the grantees with right of survivorship in the survivor; that is, survivorship is allowed, if expressly provided for, as an incident to the estate of tenancy in common. Each grantee owns an undivided one-half interest for life, plus the right to own the unencumbered whole if he survives his co-tenant. Under a joint tenancy as known at the common law, each party owned one-half and at the same time the whole, and the death of one of the joint tenants simply removed the impediment to a complete title in the survivor.

The court concluded that in case of a tenancy in common with an expressed right of survivorship as an incident thereto, the interest of the contingent remainderman is not subject to division and cannot be compelled.

However, the court further pointed out that in case of a tenancy in common, a division of the property might be had with the consent of the parties during their lives.

Here the parties had invoked the jurisdiction of equity. They could themselves have divided the tenancy with survivorship by agreement. The Chancellor was empowered by his equity jurisdiction to supply such agreement for either party. This he did.

In this status *Bernhard* can have no application, for in that case the action concerned the individual action of the parties with no power in the Chancellor to consent for either party to a division of the remainder.

Equity grants full relief when it has jurisdiction on any equitable ground to grant any relief. Having assumed jurisdiction upon the invocation of the parties, the Chancellor will determine all the interrelated equities of the whole. Equity delights to do justice, and not by halves. Moore v. Moore, 255 Ala. 393, 51 So.2d 683.

244

■ We hold that no error attached to the action of the court in ordering Rhonwyn to convey her interest in the Longmeadow property, with its incidence of survivorship, to Robert.

Counsel for Rhonwyn also contends that the court erred in not awarding sufficient alimony. The court did award to Rhonwyn all of the household furniture, except a sofa on which payments are due. Robert testified he had paid for all of such furniture. She was also granted the house on West Woodland Street, free and clear of any claim by Robert. This is the house on which Robert furnished $1,500 for the down payment, and on which he has paid the monthly installments, or on which the installments have been paid from the rental thereof since its purchase in 1960. He has also been ordered to pay $37.50 per month for the support of the child of the marriage of these parties, except during the month he has custody of the child as provided under the decree of the court.

■ As stated in Rich v. Rich, 256 Ala. 339, 54 So.2d 554:

"Under § 32, Title 34, Code of 1940 an award of alimony as an incident to the granting of a divorce is not mandatory. In the language of the statute 'the judge trying the case, shall have the right to make an allowance to the wife out of the husband's estate, or not make her an allowance as the circumstances of the case may justify.' We have said that the statute leaves much to the discretion of the trial court but this discretion is judicial and not arbitrary and is subject to review on appeal. Garlington v. Garlington, 246 Ala. 665, 22 So.2d 89; Savage v. Savage, 246 Ala. 389, 20 So.2d 784; Sills v. Sills, 246 Ala. 165, 19 So.2d 521."

■ Another principle applicable to our present review is that the misconduct of a wife, even though not grounds for a divorce, may be considered as in a measure palliating the offense of the husband and abridging her claim to an allowance of alimony.

No useful purpose would be served by detailing the evidence of the quarrels and woes that have beset this marriage. Suffice to say that after a careful reading of the evidence presented, the conclusion is inescapable that Rhonwyn did her full share in wrecking the marriage which at best was unstable from its inception.

■ The parties testified ore tenus before the Chancellor. He heard and saw the witnesses. Much must therefore be left to his discretion. Adams v. Adams, 229 Ala. 588, 159 So. 80. The Chancellor was presented with a snarled backlash from this faulty marital cast. His efforts in unravelling it appear to us to have been patient and equitable. Certainly we can find nothing arbitrary in his result. The decree is therefore due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.