224 So.2d 638

**TIGER MOTOR COMPANY, Inc.,**
a Corporation

v.

**Thomas E. McMURTRY.**

5 Div. 877.

Supreme Court of Alabama.

June 5, 1969.

Rehearing Denied July 10, 1969.

Walker, Hill & Gullage, Opelika, for appellee.

Brown & McMillan, Opelika and Auburn, for appellant.

Rushton, Stakely, Johnston & Garrett, Montgomery, amicus curiae.

BLOODWORTH, Justice.

Thomas E. McMurtry (appellee-complainant) filed a bill of complaint in the circuit court of Lee County, in equity, against Tiger Motor Company (appellant-respondent), and Ford Motor Credit Company (respondent) seeking to rescind the sale of a 1967 Ford Station Wagon which McMurtry purchased from Tiger Motor Company April 5, 1967, for breach of express or implied warranty made by Tiger Motor Company.

The bill alleges that as a portion of the agreed purchase price McMurtry executed and delivered to Tiger Motor Company his promissory note for $3,260.16, dated April 5, 1967, payable in 36 monthly installments of $90.56 each. To secure the note, McMurtry executed a chattel mortgage on the station wagon payable to Tiger Motor Company. Both note and mortgage were assigned by Tiger Motor Company to Ford Motor Credit Company. The bill alleges that in order for complainant McMurtry to have full and complete relief, i.e., cancellation of the note and mortgage, and refund of the purchase price, it is necessary to make the Ford Motor Credit Company a party to the suit.

In its answer, Tiger Motor Company admitted that the note and mortgage were transferred to Ford Motor Credit Company who, in its answer, admitted the assignment to it. Tiger Motor Company made its answer a cross-bill asking the court to decree that it is not liable to McMurtry for any breach of warranty, express or implied; and, that if the court should determine that it has been guilty of breach of warranty, the court will set off against McMurtry's claim for refund, the sum of $4,830.16, for use of the station wagon for 344 days.

In its final decree the court below found a breach of warranty, express or implied, and awarded McMurtry a money judgment in the amount of $2,923.95 as reimbursement for that portion of the purchase price which he had paid as of the time of the trial in the court below; decreed that the station wagon, upon the rescission of its purchase and sale, is the property of Tiger Motor Company, subject to the chattel mortgage or contract which was assigned to the Ford Motor Credit Company; ordered Tiger Motor Company to remove the station wagon from the premises of the complainant; ordered Tiger Motor Company to pay off the note and mortgage and satisfy the obligation in full; denied respondent Tiger Motor Company any recovery on its cross-bill; taxed all costs against Tiger Motor Company.

It is from this decree that Tiger Motor Company appeals. There are 22 assignments of error. Only 17 assignments are argued. We will treat them in the order in which they appear in brief.

*Adequate Remedy at Law*

Assignments of error 1, 2 and 3 are to the effect that the trial court erred in overruling demurrers to the amended bill of complaint which raise the point that McMurtry had a full, complete and adequate remedy at law.

Tiger Motor Company cites us several cases which suggest that a purchaser of a chattel is not entitled to maintain an action in equity to rescind the contract for breach of warranty because he has an adequate remedy at law—he may sue the seller to rescind or for damages, or he may wait for the seller to sue him for the purchase price in which case he may defend on the ground of breach of warranty. Thompson v. Harvey, 86 Ala. 519, 5 So. 825; Egan Company v. Johnson, 82 Ala. 233, 2 So. 302; Frith v. Hollan, 133 Ala. 583, 32 So. 494, 91 Am.St.Rep. 54.

A reading of those cases discloses that in none of their factual situations was there a promissory note and mortgage transferred to a third party, not a party to the original contract of purchase and sale. We are of the opinion that the cases cited are inapposite.

■■■ We have said that equity alone may enforce recission of contracts and surrender and cancellation of instruments. Nicolopoolos v. Donovan, 221 Ala. 16, 127 So. 543. Our decisions do hold that equity jurisdiction cannot be invoked to cancel or rescind a contract when complainant's remedy at law, either by way of action or defense, is plain, adequate and complete. National Life & Accident Ins. Co. v. Propst, 219 Ala. 437, 122 So. 656. However, we are equally committed to the proposition that if the remedy at law is difficult or doubtful or inadequate, it is sufficient to give equity jurisdiction. Teague v. Russell, 2 Stew. 420; Prestwood v. Bagley, 227 Ala. 316, 149 So. 817.

■■■ In the instant case if McMurtry had proceeded with an action at law, such suit would not have afforded him complete relief in view of the fact that Ford Motor Credit Company was ostensibly a holder in due course[1] of the note and mortgage, which contained the following language:

"Buyer [McMurtry] understands and agrees that Buyer will settle with the Original Seller all claims, setoffs, counterclaims, and other defenses there may be against the Original Seller and that Buyer shall not set up any such claim, set-off, counterclaim or other defense against any such subsequent holder."

In an action at law he could neither have joined Ford Motor Credit Company nor sought relief to cancel the note and mortgage nor sought damages recoverable here.

Likewise, it would appear McMurtry could not risk stopping payment on the station wagon, and wait to be sued by Ford Motor Credit Company because under the language of the contract he would have no defense against it for breach of warranty.

Thus, although we conclude the trial court correctly overruled the demurrers in question, we cannot agree that it gave the correct reasons for its decision. In a very well written and thorough decree overruling demurrers, the trial court relied on a number of cases which hold that equity has jurisdiction to rescind transactions induced by fraud. In the instant case there were neither allegations nor evidence to establish fraud. Nevertheless, a correct decision will not be disturbed because the court gave a wrong or insufficient reason therefor. Gulf American Fire & Casualty Ins. Co. v. Gowan, 283 Ala. 480, 218 So.2d 688; Cherokee County v. Cunningham, 260 Ala. 1, 68 So.2d 507.

### Right to Jury Trial

Assignments of error 8 and 9 raise the point that the action of the trial court in overruling demurrers to the amended bill of complaint denied Tiger Motor Company the right to a "trial by jury in a cause cognizable only on the law side of the court."

■■ Without conceding Tiger Motor Company was entitled to a trial by jury, in the absence of a demand therefore it cannot now complain that it has been deprived of that which it did not request nor demand in the court below. Title 7, § 322, Code of Alabama, 1940. We find no merit in the contention that the action of the trial court in overruling Tiger Motor Company's demurrers to the amended bill deprived it of a jury trial.

### Seeking Money Judgment

In assignments 4–6 (complaining of overruling of demurrers) Tiger contends that a money judgment at law would give McMurtry all the relief he is estitled to, assuming he proves his case. We are cited

---

1. Title 7A, § 3—302, Code of Alabama (Recompiled 1958).

to Merchants' National Bank of Mobile v. Roche, 227 Ala. 639, 151 So. 591, and Lee v. Gaines, 244 Ala. 664, 15 So.2d 330, in support of the proposition that courts of equity will not assume jurisdiction where the only relief sought is the recovery of a money judgment.

While this may be a correct statement of that principle of law, a reading of the bill of complaint discloses that it not only seeks a money judgment, but other equitable relief (i. e., rescission of the contract of sale, cancellation of the note and mortgage and refund of the purchase price). A court of equity will grant full relief when it has jurisdiction on any equitable ground to grant relief. Owens v. Owens, 281 Ala. 239, 201 So.2d 396; Coleman v. Estes, 281 Ala. 234, 201 So.2d 391; Winslett v. Rice, 272 Ala. 25, 128 So.2d 94. Consequently, we find no merit in assignments of error 4, 5 and 6.

### Rendering Money Judgment

The gist of assignments 12, 13 and 15 is that the trial court erred in rendering a money judgment against Tiger Motor Company, and directing it to pay off McMurtry's obligations to Ford Motor Credit Company. It is argued that if the appropriate relief was a money judgment, then the cause should have been heard on the law side, and should have been submitted to a jury. But, the relief granted by the trial court included more than a mere money judgment. We have already pointed out that the granting of a money judgment was incidental relief, and therefore a judgment on the law side would not give complete relief. Owens v. Owens, supra; Coleman v. Estes, supra; Winslett v. Rice, supra.

### Insufficiency of the Evidence

Assignments 19–22 raise the point that the evidence is insufficient to prove a breach of warranty by Tiger Motor Company, but to the contrary the evidence shows that it has performed every warranty made by it or Ford Motor Company (assuming Tiger made any warranty which it denies).

#### a. Disclaimer

Tiger Motor Company contends that the provisions of Title 7A, § 2—316, Code of Alabama (Recompiled 1958), which permits a seller to exclude or modify any warranty of fitness or of merchantability by express language, has application to the instant case in view of the following language contained in *Owner's Manual for 1967 Ford Cars and Light Trucks,* viz:

"The warranties herein are expressly IN LIEU OF any other express or implied warranty, including any implied WARRANTY of MERCHANTABILITY or FITNESS, and of any other obligation on the part of the Company or the Selling Dealer."

Under the provisions of Title 7A, § 2—316, supra, language of such a "disclaimer" is designed and intended to permit a seller to limit his warranties, and to properly exclude those he does not wish to make in accordance with the applicable law. This type of exclusion has been approved by other courts. Cox Motor Car Company v. Castle (Ky.) 402 S.W.2d 429.

But, the evidence tends to show that the Owner's Manual was not delivered to McMurtry until the day after the automobile was delivered. There is no evidence that McMurtry was informed of the "disclaimer" provision contained in the written warranty (in the Owner's Manual) prior to the delivery of the automobile.

When Mr. McMurtry was cross-examined with respect to the warranties extended to him on the purchase of the station wagon automobile, he testified as follows, viz:

"A. Mr. Gunter told me that he was responsible for service on the car and that there was only one dealer in this area.

"Q. He said that he was responsible to Ford Motor Company, didn't he?

"A. *He told me his responsibility was with me.*

"Q. You just read that it would be performed by the dealer. Now, the beginning of the warranty,, which you read, was the Ford Motor Company warranty, that the dealer will carry out. Isn't that the contract?

"A. *Well, the contract was with Mr. Gunter, and he explained to me that he was responsible for service on the car and to look directly to him.*

"Q. But that warranty says that it was the only one that was made, isn't it?

"A. *The only one that was made to me was verbal more than anything else and I received this book after accepting delivery of the vehicle.*

"THE COURT: Before you purchased this car, Mr. McMurtry, did Mr. Gunter or anyone else tell you that there was to be a written warranty?

"A. No, as I said, we discussed the warranty and what was given to me was twenty-four months or twenty-four thousand miles." [Emphasis supplied]

Mr. Gunter, President of Tiger, on direct examination, gave the following answers to the following questions:

"Q. You are familiar with the transactions that your corporation has had with Mr. McMurtry?

"A. Most of them, yes.

"Q. Who sold him this car?

"A. I personally sold it to him.

"Q. What, if anything, did you tell him with respect to the warranties on the automobile?

"A. I explained the warranties in the Ford Manual and the dealer's obligation to perform those warranties.

\* \* \* \* \* \*

"Q. And when was the warranty that he has put in evidence, here, delivered to him, the owner's manual?

"A. The warranty is usually given along with the bill of sale and a copy of the conditional sales contract, should it have been financed at the same time.

"Q. *As far as you know, those papers were delivered to him at the same time the car was, or the next day?*

"A. · *Chances was that it was the next day,* because they have to be typed up and we cannot type it up until it is signed. So, it is impossible to deliver the car and not deliver the papers at the same time." [Emphasis supplied]

Title 7A, § 2—316, Official Comment, Recompiled Code 1958, provides that this section "seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty and permitting the exclusion of implied warranties only by conspicuous language or other circumstances which protect the buyer from surprise."

In Cherokee Investment Co. v. Voiles (Colo.) 443 P.2d 727, buyer of a defective water conditioner brought suit against seller for breach of implied warranty of fitness. Judgment was entered for buyer and seller appealed claiming, inter alia, that a disclaimer clause contained in its printed order form was sufficient under the Uniform Sales Act to negative any implied warranties which under the Sales Act might normally attach to the sale.

The disclaimer stated that the equipment purchased by buyer is subject to the manufacturer's warranty, and it is the only warranty either express or implied made pursuant to this sale. The Colorado Court found "\* \* \* no evidence whatever that the disclaimer clause in question was called to plaintiff's attention or that they understood it was intended to relieve Cherokee of liability. On the contrary, plain-

tiffs' uncontradicted testimony was that they were advised to call Cherokee if they had any trouble with the conditioner." The court determined that the provisions of "disclaimer" should be "clearly brought to the attention of the buyer * * *." See also, Smith v. Regina Manufacturing Corporation, 4 Cir., 396 F.2d 826.

■ Thus, we are of the opinion that the disclaimer cannot defeat the express oral warranty made by Tiger to McMurtry.

### b. Breach of Warranty

Tiger Motor Company contends that it has at all times been willing to carry out the express warranty made by Ford Motor Company to McMurtry. The warranty made by Ford Motor Company was to replace without cost to the buyer any defective parts and to effect all repairs made necessary by defective parts, provided such defects are revealed within 24 months after the purchase, or 24,000 miles usage, and provided further that the vehicle be subjected only to "normal use and service." [2] In the absence of a failure on its part to make repairs to the vehicle when called upon to do so, Tiger insists it can not be found to have breached any warranties.

This contention is made notwithstanding the fact that McMurtry's station wagon was returned for repairs "on at least 30 occasions and remained in the custody of the respondent Tiger Motor Company, Inc., for repairs during said period of time [April 5, 1967 to April 1968] for not less than forty (40) days and perhaps fifty (50) days."

■ In effect, Tiger contends that it has the right to remedy defects in the automobile for an apparently unlimited pe-

riod of time. This type of argument is not novel. In General Motors Corporation v. Earnest, 279 Ala. 299, 184 So.2d 811, the buyer of an automobile brought suit against the dealer and manufacturer for rescission of a contract on the basis of breach of warranty. There, the evidence disclosed that shortly after the automobile was purchased, the purchaser brought it in to the dealer complaining that it vibrated badly, had a knock in the motor, and idled roughly. The dealer attempted to repair it. Thereafter, the purchaser continued to complain about various defects, and in fact returned the automobile to the dealer fifteen times for repairs. The dealer contended, as does the dealer here, that it had lived up to the warranty agreement and replaced or repaired all defects and would continue to do so throughout the life of the warranty. In answering dealer's contention, we said:

"We can agree with the appellee's contention that at some point after the purchase of a new automobile, the same should be put in good running condition, that is, the seller does not have an unlimited time for the performance of the obligation to replace and repair parts. 46 Am.Jur., Sales, § 732; 77 C.J.S. Sales § 340. *This is no more than saying that at some point in time, it must become obvious to all people that a particular vehicle simply cannot be repaired or parts replaced so that the same is made free from defect.*" [3] [Emphasis supplied]

Here, McMurtry has repeatedly been forced to return the vehicle to Tiger Motor Company for repairs. It has had numerous opportunities to perform under the warranties, yet it has failed to remedy all the defects.

2. "BASIC VEHICLE WARRANTY. Ford Motor Company warrants to the owner each part of this Ford-built vehicle to be free under normal use and service from defects in material and workmanship for a period of 24 months from the date of original retail delivery or first use, or until it has been driven for 24,000 miles, whichever comes first."

3. Title 7A, §§ 2—101 to 2—725, Code of Alabama, Recompiled 1958, pertaining to sales is the Uniform Commercial Code's counterpart to what was formerly contained in the Uniform Sales Act, Title 57, §§ 1–76, Code of Alabama 1940.

In Zabriskie Chevrolet, Inc. v. Smith, 99 N.J.Super. 441, 240 A.2d 195, an automobile dealer sued the purchaser of a new automobile for the balance of the purchase price. The buyer counterclaimed for the return of his deposit and incidental expenses. The New Jersey court held that defects in the automobile constituted a breach of the contract of sale and the implied warranty of merchantability.

In that case, buyer's wife had picked up the new automobile, and was driving it home when the car stalled. The car continued to stall whenever it was stopped. Buyer immediately stopped payment on his check given for the purchase price, and notified seller the sale was cancelled. The New Jersey court determined the purchaser had never "accepted" the automobile within the contemplation of the Uniform Commercial Code; therefore, buyer was entitled to reject the car because of its nonconforming defects. Also, he was held entitled to a refund of his down payment.

Assuming without deciding that McMurtry "accepted" the station wagon within the meaning of the Uniform Commercial Code,[4] the question arises as to whether a purchaser is entitled to rescind the sale if he "accepted" the automobile prior to rescission of the contract of purchase. The court in Zabriskie Chevrolet, Inc. v. Smith, supra, said:

"Even if the defendant had accepted the automobile tendered, he had a right to revoke * * *:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it.

(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them * * *."

[See Title 7A, § 2–608, Code of Alabama, Recompiled 1958, for identical provisions.]

, The Official Comment to Title 7A, § 2–608, Code of Alabama, Recompiled 1958, which speaks to revocations of acceptance provides:

"2. Revocation of acceptance is possible only where the non-conformity substantially impairs the value of the goods to the buyer. For this purpose the test is not what the seller had reason to know at the time of contracting; *the question is whether the non-conformity is such as will in fact cause a substantial impairment of value to the buyer though the seller had no advance knowledge as to the buyer's particular circumstances.*" [Emphasis supplied]

Was the non-conformity of the station wagon in the instant case of such a magnitude as to cause a "substantial impairment of value" to the buyer, McMurtry?

We do not consider it necessary to burden this opinion with a complete recapitulation of the evidence adduced by McMurtry relative to the defects in the Sta-

4. This was not an issue in this case.

tion wagon.[5] We noted earlier that the automobile was taken in for repairs an inordinate number of times during the period in which it was in McMurtry's possession.

We mention the following as constituting some of the defects. The automobile used oil to such an extent that complainant was forced to purchase it by the case. It got approximately 8 miles per gallon of gas, and required a new fuel pump, new carburetor, new piston rings, and a "short block." Thereafter, the automobile continued to skip or misfire, and to use oil at an excessive rate.

We note that the provisions of the Uniform Commercial Code are intended to be "liberally construed and applied to promote its underlying purposes and policies." Title 7A, § 1—102, Code of Alabama, Recompiled 1958.

 ██ The right to rescind does not arise from every breach of warranty. Each case must be carefully examined on its own merits to determine what is a "substantial impairment of value." We are aware that what may cause one person great inconvenience or financial loss, may not another. In the instant case, we are of the opinion the evidence supports the conclusion that there has been a substantial impairment of value to complainant, McMurtry.

Having determined that there has been a substantial impairment of value, the remaining question is what constitutes a "reasonable time" in which McMurtry had to rescind the instruments within the meaning of § 2–608, Title 7A, supra. This section of the Commercial Code entitles the buyer to revoke his acceptance of a "lot or commercial unit," [6] if the non-conformity thereof substantially impairs its value to him if (a) he accepted the automobile "on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured," or (b) if he accepted the automobile "without discovery of such non-conformity if his acceptance was sea-

5. The following summary of evidence of the defects is contained in the written decree of the trial court:

"* * * that said automobile used an excessive amount of oil from the time it was purchased from the said Tiger Motor Company, Inc., having required the adding of one quart of oil during the first 500 miles driven, and that said automobile blue oil from under the gasket, and that the defective condition causing said automobile to use excessive oil and to blow oil from the gasket was never corrected by the said Tiger Motor Company, Inc. and that said automobile continued to use oil excessively until it was parked in the complainant's driveway in the month of April, 1968, after the complainant had tendered said automobile to the said Tiger Motor Company, Inc. and requested the money back which he had paid on said automobile, and the complainant bought oil by the case for said automobile; that before the complainant had driven the said automobile 14,000 miles that said automobile was getting approximately 8 miles per gallon of gasoline; that the said Tiger Motor Company, Inc. installed a new fuel pump on said automobile in September, 1967, and a new carburetor in Oc-

tober, 1967, and that in January, 1968, the said Tiger Motor Company, Inc. installed new piston rings, but thereafter said automobile continued to use oil excessively; that in March 1968, the respondent Tiger Motor Company, Inc. installed a 'short block' in said 1967 station wagon automobile and told the complainant that the respondent Tiger Motor Company, Inc. had finally repaired the said station wagon automobile, but thereafter the said 1967 station wagon automobile continued to use oil at an excessive rate, continued to skip or misfire and exhibit numerous other mechanical defects, which defects continued until the said station wagon automobile was parked in the complainant's driveway as aforesaid; that during the period from April 5, 1967, until the end of April, 1968, the said station wagon automobile was returned to the respondent Tiger Motor Company, Inc. for repairs on at least 30 occasions and remained in the custody of the respondent Tiger Motor Company, Inc., for repairs during said period of time for not less than forty (40) days and perhaps fifty (50) days * * *."

6. See definitions at Title 7A, § 2—105(5) and (6).

sonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." Obviously, McMurtry purchased the automobile on the reasonable assumption that any non-conforming defects would be cured.

Gorman-Gammill Seed & Dairy Supply Co. v. Carlisle, 220 Ala. 116, 124 So. 288, was an action on a note for the purchase price of a water and light plant. The defense was rescission. Appellant argued that the right to rescind was lost by delay in the attempt to exercise it. Appellee contended that the delay of 8 months in electing to rescind was due to the efforts of appellant to show that the plant would handle the work for which it was purchased. This court held at p. 118, 124 So. at p. 290:

"It has been more than once stated in opinions of this court, and now reaffirmed, that delay in exercising the right to rescind due to promises and efforts of the seller to demonstrate that the plant was suitable for the purpose for which it was purchased is an excuse for such delay. * * *"

In Barnes v. Chester Burnham Chevrolet, Inc. (Miss.), 217 So.2d 630, an automobile seller brought suit to recover deficiency on the sale of an automobile after buyer became delinquent in his payments and returned the automobile to seller. Buyer counterclaimed for breach of warranty. The court found that since buyer kept the car for a period of nine months after seller would no longer repair it, he was precluded from seeking a rescission of the sale since he had failed to return the car within a reasonable time and had not given seller any notice that he was rescinding the sale during this period.

We think the evidence supports the conclusion that Tiger Motor Company warranted that it would remedy all defects for the first 24,000 miles, or the first 24 months after purchase, whichever comes first. In the instant case, the buyer was in almost constant touch with seller concerning the condition of the vehicle (unlike the situation in Barnes v. Chester Burnham Chevrolet, Inc., supra). Under the terms of the warranty, and under the terms of the Uniform Commercial Code the seller has the right to attempt to "cure" any defects in the automobile. (See, Zabriskie Chevrolet, Inc. v. Smith, supra, for a discussion of the meaning of "cure" within the contemplation of the Uniform Commercial Code.)

However, as we noted in General Motors Corporation v. Earnest, supra: "* * * at some point after the purchase of a new automobile, the same should be put in good running condition, that is, the seller does not have an unlimited time for the performance of the obligation to replace and repair parts. * * *"

Repeated attempts at adjustment having failed, we hold the buyer McMurtry revoked his acceptance of the automobile within a reasonable time.

We therefore find no ground of reversal for insufficiency of the evidence.

The remaining assignments of error argued by counsel are those numbered 16 and 18. They are to the effect that the trial court erred in finding that Tiger Motor Company was not entitled to any relief under its cross-bill, and that the court failed to require McMurtry to do equity. We have discussed all of these contentions rather fully. Any further discussion here would be redundant.

We conclude there was no reversible error in the record, and that the trial court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, MERRILL and HARWOOD, JJ., concur.

LAWSON and COLEMAN, JJ., dissent..

COLEMAN, Justice (dissenting):

In this case, the question is raised whether a buyer of a chattel is entitled to

proceed in equity to rescind a contract on the ground that the seller has breached a contract to repair the chattel.

It appears to be established that "* * *. there were neither allegations nor evidence to establish fraud." Also, it does not appear that there was any mistake which entered into the making of the contract.

"'Courts of equity do not take jurisdiction merely for the purpose of declaring a rescission, but only for the purpose of administering some form of equitable relief or protection not available in other forums, or where, by reason of the insolvency of the offending party, a judgment at law might fail to compensate the injured party, or to place him in statu quo.' Hafer v. Cole, 176 Ala. 242, 249, 57 So. 757, 760." Cooper v. Drennen, 206 Ala. 549, 90 So. 787.

To like effect, see Nicolopoolos v. Donovan, 221 Ala. 16, 17, 127 So. 543, 544, where this court held that a bill for rescission of a contract for purchase of real estate was subject to demurrer on the ground that "(1) There is no equity in the bill. (2) Complainants have a complete and adequate remedy at law for the enforcement of their rights."

"* * * 'The doctrine is settled that the exclusive jurisdiction to grant purely equitable remedies, such as cancellation, will not be exercised, * * * in any case where the legal remedy, either affirmative or defensive, which the defrauded party might obtain, would be adequate, certain, and complete' * * *." National Life & Accident Ins. Co. v. Propst, 219 Ala. 437, 438, 122 So. 656.

See also Goltsman v. American Life Ins. Co., 248 Ala. 151, 26 So.2d 596.

So, the only reason for allowing the instant complainant to maintain a suit in equity for breach of contract is that his remedy at law is not adequate. It is contended that his remedy at law is not adequate because he could not obtain relief against Ford Motor Credit Company in an action at law.

As I read the final decree, the trial court did not find it necessary to award any relief against Ford Motor Credit Company. The trial court did not order Ford Motor Credit Company to do anything. I find only two paragraphs in the decree wherein reference is made to Ford Motor Credit Company. In those paragraphs the court orders:

"3. That the said * * * automobile described in the complaint * * * is now the property of the respondent Tiger Motor Company, Inc., subject to the chattel mortgage or contract thereon which was transferred and assigned to the respondent Ford Motor Credit Company, and the said Tiger Motor Company, Inc., be, and it is hereby, authorized and directed to move said station wagon from the premises of the complainant, at its own expense, within 10 days from the date of this decree.

"4. That the respondent Tiger Motor Company, Inc., be, and it is hereby, ordered and directed to pay off said note and chattel mortgage, or contract, transferred and assigned by it to the said Ford Motor Credit Company, and discharge and satisfy said obligation in full, and cause any and all mortgage and lien records where such instruments may have been recorded to be marked satisfied of record within thirty days from the date of this decree, and immediately upon the expiration of thirty days from the date of this decree to report to this Court how and by what manner it has complied with this provision of this decree."

The court never did order cancellation of complainant's note and mortgage. The court merely ordered Tiger Motor Company, Inc. to pay the note and have the mortgage record satisfied. The statute compels the mortgagee to satisfy the record when the mortgage is paid. Title 47, §§ 178, 179.

In substance and effect, the decree is nothing more than a money judgment against Tiger Motor Company, Inc. Such a judgment could be awarded at law and would make complainant whole.

As I understand the case, complainant had the use of the automobile for eleven months and drove it over 20,000 miles. The point is relatively a minor one, and it may be that respondents are not entitled to be placed in *statu quo,* but the general rule as to rescission is that the party seeking rescission should restore the parties to their original position if he offers to do equity.

With respect to the right of complainant to maintain this suit in equity, in a jurisdiction where the separateness between law and equity is maintained, this case is certainly one of first impression and may be sui generis. I would sustain the demurrer and order the case transferred to the law side. Title 13, § 149, Code 1940.