307 So.2d 17

**Anna Elizabeth DYAL**

v.

**Henry James DYAL.**

**Civ. 467.**

Court of Civil Appeals of Alabama.

Jan. 22, 1975.

Nicholas S. Hare, Monroeville, for appellant.

Lee B. Williams, Grove Hill, for appellee.

WRIGHT, Presiding Judge.

Plaintiff appeals from a decree denying her a divorce on the ground of incompatibility. We reverse.

The trial court having heard the evidence ore tenus denied plaintiff a divorce stating that the evidence did not meet the requirements of the law of Alabama relating to the ground of incompatibility of temperament. Plaintiff charges error in the application of law to the facts.

The ground for a divorce of incompatibility of temperament was placed in our statute by the legislature in 1971. Act 222, Amending Title 34, Sec. 20, Code of Alabama. A definitive discussion of such ground was first set out by this court in the case of Phillips v. Phillips, 49 Ala.App. 514, 274 So.2d 71. The Supreme Court of Alabama has yet to define the ground of incompatibility. Phillips v. Phillips, 290 Ala. 370, 274 So.2d 80. This case may present the opportunity.

Let us look briefly to a summary of the unconflicting evidence presented in this case.

The parties were married in 1960. They reside near Uriah, Monroe County, Alabama. Four children were born, the oldest now 13 and the youngest now 5. The father works in Pensacola, Florida. He alternates shifts every week, working both days and nights. For the last six years the wife has been employed in a general store near her home as bookkeeper and secretary. When not working or sleeping the husband liked to fish and hunt. He pursued this recreation avidly and owned expensive boats, motors, and other equipment. The husband's income is $180.00 per week. The wife nets some $85.00 per week. There were apparently no financial problems and had been no open marital problems until about December of 1973.

In December, 1973, a difficulty arose between plaintiff and the wife of her employer. It is not clear from the record whether the employer and his wife were married or divorced at that time, but apparently they were having marital difficulties. Plaintiff had been instructed by her employer not to allow anyone access to the contents of his safe when he was absent. His wife came to the store and demanded of plaintiff that she open the safe. When she refused an altercation occurred. Plaintiff was subsequently charged with assault and battery by her employer's wife. This matter apparently became widely known in the rural community. The charge against the plaintiff was later dropped by agreement. It appears that defendant became greatly concerned about the matter and vigorously insisted to plaintiff that she sue her employer's wife for slander and clear her reputation. The evidence indicates that he persistently harrassed plaintiff not to drop the matter but to pursue it in court. She refused to do so and the rift in the marriage resulted.

Defendant demanded that plaintiff quit her job and accused her of immoral conduct with her employer in the presence of the children. He told her her reputation in the community would be ruined if she divorced him. He insisted that if she didn't quit her job, she could not live with him. Defendant went to the county seat at Monroeville and reported to the Department of Pensions and Security that his wife was about to abandon her children and leave them uncared for. This report was not true. Plaintiff's testimony was

that because of the continual harassment and accusations by defendant in front of the children, she ceased loving him. She sought to break off conjugal relations by sleeping in another room, but defendant would not consent. She continued sleeping in the same bed with defendant but ceased sexual relations prior to filing for divorce in July, 1974. Prior to trial, plaintiff left the home and began staying with her parents who lived nearby.

Defendant, on one occasion, went to plaintiff's place of employment and cursed her in a loud voice. He discussed their problems with plaintiff's parents, his parents and with the children. Plaintiff had always carried the primary responsibility of caring for the children. She carried them to school, to piano lessons and regularly to church. She had been nominated as president of the P.T.A. at the high school where some of the children attended. She carried them on recreational outings and otherwise provided them attention and care. After the separation and because of accusations of the father and what they heard about their mother from others, some of the children declined to live with plaintiff and would not talk to her.

After the separation and action for divorce was begun, defendant stated he sought reconciliation with plaintiff, but with conditions. Such conditions were that plaintiff quit her job, stay at home, be deprived of her car and funds, go out only when he was along and do everything required to rebuild her reputation in the community.

Defendant's original answer to the complaint was a cross-complaint for adultery. Plaintiff was specifically charged with acts of adultery with her employer. This charge was subsequently withdrawn by defendant.

There was no testimony of any immoral conduct by plaintiff, though defendant stated he had tried to catch her and her employer for two years and that "there is no one in the community that will tell you he hasn't been going with her."

■ Plaintiff unequivocally stated to the court that she no longer loved her husband and would not submit to further marital relations. Defendant stated he loved her enough to live with her for the sake of the children, but only if she submitted to the conditions he required.

With the evidence as related, we find that the elements of incompatibility of temperament have been preponderantly established. We said in Phillips v. Phillips, supra:

"[I]ncompatibility refers to conflicts in personalities and dispositions so deep as to be irreconcilable and to render it impossible . . . to continue a normal marital relationship with each other."

We further said:

"Consideration may be given of, but not necessarily limited to, whether or not there is conflict of personality; whether or not there is mutual concern for the emotional needs of each other; whether the marriage is characterized by financial difficulties, long physical separation, difference of interest, resentment, coolness, distrust and constant bickering; and antagonistic feelings that are irreversible and demonstrate an irremediable rift."

The evidence in this case is undisputed that plaintiff no longer loves her husband. That she will not submit to further conjugal relations with him. The evidence is clear that the husband, in his own mind, has determined his wife to be an adultress. He is willing for her to return to the home to be a mother to his children, but only if she submits to conditions of subservience so degrading as to be tantamount to an admission of guilt as an adultress. The imposition of such conditions is not conducive to promotion of a normal marital relationship. Neither is it reasonable to expect that a wife would submit to such condi-

tions while maintaining self respect and the respect of her children.

We conclude that there exists a state of imcompatibility of temperament so deep as to render it impossible for the parties to continue a normal marital relationship. As expressed in *Phillips,* it matters not which party is at fault nor which is more responsible for bringing about such condition. The fact that one party is willing or desirous of resuming the marriage does not control. As we said in *Phillips*:

"[W]hen incompatibility . . . is shown, a divorce may not be denied solely because the defending spouse voices opposition to its granting."

With understanding and appreciation that the learned trial judge was concerned with preventing the disruption of a marriage and the lives of four children, we nevertheless must hold him in error under the undisputed evidence. The disruption of the marriage and the lives of the children has occurred. It is a present fact. Coercion to attempt reconcilation by denying the facts of clear incompatibility is not the answer to this family's problem. If reconciliation is possible it will come from a renewed love, trust and respect for one another. Lawful divorce will not prohibit reconciliation if the parties desire it.

The error of the trial court was in applying the law to the evidence. The presumption of correctness of a decree rendered after hearing ore tenus does not apply when the court errs in applying the law to the evidence in a case. Collier v. Brown, 285 Ala. 40, 228 So.2d 800.

An attorney fee of $250.00 is granted appellant for use of her attorney for his services on this appeal.

Reversed and remanded.

BRADLEY and HOLMES, JJ., concur.