This appeal is from a divorce decree. We affirm.
The parties were married on April 7, 1962, and are parents of a thirteen-year-old *Page 786 
son. During the summer of 1975 they separated. Mr. Plaskett filed for divorce on the ground of incompatibility on July 10. Mrs. Plaskett contested the divorce but sought attorney's fees and asked that she be given custody of the child if a divorce were granted.
The first trial was commenced on December 10, 1975. At the hearing the trial judge adjudged Mrs. Plaskett guilty of contempt because of some altercations outside the court room, and then recused himself from further participation in the case.
This matter then proceeded to trial before another judge who heard the evidence ore tenus on March 31, 1976. On April 8, the court entered judgment granting the divorce on the ground of incompatibility; awarding custody of the son to Mrs. Plaskett with Mr. Plaskett having visitation rights for two months in the summer, a week at Christmas and during spring school vacation; ordering Mr. Plaskett to pay $150 monthly child support as well as all reasonable medical expenses of the son; ordering the sale of the family home in a commercially reasonable time and manner to pay off family debts of approximately $7,000 and the mortgage of $20,000 with any surplus to be paid to the register for division with the personal property; and ordering a reference by the register for division of personal property and proceeds from sale of the house, after payments of the debts, "as equally as possible."
On May 4 Mrs. Plaskett moved for a new trial. The court heard additional testimony and on August 9, 1976, amended its prior judgment so as to require the register to sell the home as soon as possible, to state that no debts incurred after March 31 could be included in family debts, and to grant visitation rights to Mr. Plaskett every weekend. On September 16 Mrs. Plaskett appealed. On September 22 supersedeas bond of appellant in the amount of $100 was filed and approved.
By order of August 13, 1976, the register ordered the parties to submit a list of all personal property, except clothing, together with value of each item by August 24. Mr. Plaskett submitted a list but Mrs. Plaskett did not. Reference was set for September 16. The report of reference filed September 17, 1976, indicates that the session was a stormy one. Apparently the parties were requested by the register to choose articles (from Mr. Plaskett's list). The report has attached their choices. In substance, the register, under the choosing method, divided the personal property in the following manner: 1974 Buick to Mrs. Plaskett, 1969 Volkswagen to Mr. Plaskett, Mr. Plaskett retained his contributions to the incentive plan; otherwise each party received half the value of the personal property as listed and valued by Mr. Plaskett (approximately $10,000 each). Mrs. Plaskett on September 27 objected to the values of certain items and also stated some were the possessions of the son or members of her family and should not have been included in the division. No further proceedings appear in the record.
The record does not reveal whether the report of reference was ever submitted to the judge for his consideration. We must assume that it was not adopted or rejected. It should be noted that notice of appeal was filed on the date of reference and prior to the report. Therefore the trial judge had lost jurisdiction to act upon it, especially since a supersedeas bond was approved. This being true, any question of division of the property is not before this court of appeals.
From the testimony it is clear the parties were entitled to a divorce even though Mrs. Plaskett testified she still loved her husband and did not want a divorce. The record is replete with evidence sufficient to support a finding of incompatibility.
The relationship which led to the separation involved a visit made by Mrs. Plaskett to the San Francisco area. Prior to her marriage to Mr. Plaskett, Mrs. Plaskett had been employed by a man to keep his two children. In June of 1975 she told Mr. Plaskett she was going to Mobile to visit some friends for a few days. In fact, Mrs. *Page 787 
Plaskett had flown to California at the expense of her former employer and remained there two weeks. Mrs. Plaskett contends she told her husband she was going to California and that while there she visited the man's entire family. She testified that she had been in love with her former employer but things had changed since then. Upon her return to Alabama Mr. Plaskett filed for divorce.
There was some testimony by Mrs. Plaskett concerning her husband's relationship with a female employee at Wolverine but no other testimony to substantiate the existence or nature of that relationship.
This marriage was clearly at an end and most of the fault appears to stem from the conduct of Mrs. Plaskett. We find no error in the granting of the divorce. Dyal v. Dyal, 54 Ala. App. 206, 307 So.2d 17 (1975); Phillips v. Phillips, 49 Ala. App. 514, 274 So.2d 71, cert. denied, 290 Ala. 370, 274 So.2d 80
(1973).
The parties owned no realty other than the family home, which had an outstanding mortgage indebtedness of $20,000. The home was valued at between $35,000 and $40,000. Mrs. Plaskett testified she did not want the home for herself but for her son who had a mild learning disorder.
Mr. Plaskett was superintendent of the aluminum department at the Wolverine Tube Division of Universal Oil Products Company in Decatur. He received a monthly salary of $1,550. Monthly deductions included $459.52 for withholding, unemployment insurance and FICA; $11.33 for life, health and accident insurance; $25 for retirement; $4 for United Fund; $230 for Wolverine credit union ($7 for savings); and $50 for the company incentive investment plan. His net take home pay per month was $770.15. On February 29, 1976, Mr. Plaskett had accumulated $47 in a savings account with the credit union. On December 31, 1975, Mr. Plaskett had $3,740.04 invested in the incentive plan; the company had contributed $1,452.82 of this amount and Mr. Plaskett $1,630. If he withdrew anything within the first five years (before July, 1977), he would lose the entire company contribution and not be allowed to make any contributions himself for a year. He would be able to withdraw only 50% of the company contribution in 1977 and increasing amounts until 1982 when the total contribution could be withdrawn. This incentive plan was an investment subject to gains and losses in a trust fund.
The son of the parties had certain accounts in Tennessee banks totalling $1,763.99, most of which had been contributed by Mr. Plaskett's father. The Bank of Loretto indicated by letter that one of these accounts (for $767.31) was held by Mr. Plaskett.
Certain family debts had been incurred over the years. These debts total $7,197.56. It appears the trial court was referring to these debts when it spoke of approximately $7,000 in family debts which should be paid out of the proceeds from the sale of the family home. Mr. Plaskett was paying $423.00 per month on the debts in addition to $167.72 per month on the home.
Mrs. Plaskett worked for only a month or two during the marriage of the parties. After they separated she worked for a time at the County Meat Market. At the time of the March hearing she was working for Decatur Credit Union where her weekly take home pay was $74 but she left that job after two months. At the time of the August hearing she was working as a receptionist and assistant for a dentist at $100 per week. She had registered in the dental assistant program at a local junior college to begin in September of 1976. She could not continue to work while in school but would be eligible for $100 monthly unemployment compensation. While attending school she would receive free books and tuition, $1 weekly transportation expense, and $60 weekly stipend as long as she maintained her grades at a certain level. She testified that she needed $452 a month as living expenses, including $150 for food and $100 for utilities. She had no medical or hospital insurance.
An orthopedic surgeon stated that he had performed surgery on Mrs. Plaskett in 1974 *Page 788 
in which some lumbosacral vertebra in her back were fused together and some entrapped nerve roots in her spine were decompressed. As a result she has only limited movement of her back and a 15-20% physical impairment to the body as a whole. Mrs. Plaskett also testified she experienced partial paralysis of the left hand and might be suffering from a liver disease.
It is difficult to determine exactly which aspects of the divorce decree Mrs. Plaskett complains of. She apparently contends the court erred in not granting her alimony, failure to award adequate child support and in ordering sale of the home. She made no request for alimony or general relief by any pleading prior to trial. Neither did she make such request orally at trial nor allege the absence of alimony as error in her motion for new trial.
An award of alimony as incident to the granting of a divorce is not mandatory but at the discretion of the trial court. Richv. Rich, 256 Ala. 339, 54 So.2d 554 (1951); Garlington v.Garlington, 246 Ala. 665, 22 So.2d 89 (1945). Misconduct of a wife, even though not grounds for a divorce, may be considered as in a measure abridging her claim to an allowance of alimony.Owens v. Owens, 281 Ala. 239, 201 So.2d 396 (1967); Sanford v.Sanford, 271 Ala. 508, 125 So.2d 1 (1960).
In light of the part Mrs. Plaskett played in the downfall of the marriage, her future prospects of earnings and her present living expenses, we find no palpable error committed in the failure to award alimony. Of course we are aware that without such allowance Mrs. Plaskett will not be able to seek alimony in the future. Davis v. Davis, 274 Ala. 277, 147 So.2d 828
(1962); Wells v. Wells, 230 Ala. 430, 161 So. 794 (1935).
Mrs. Plaskett contends she should be allowed additional money for child support. The amount of child support is a matter for the discretion of the trial court and will not be revised on appeal except for an abuse of that discretion. Phillips v.Phillips, 277 Ala. 2, 166 So.2d 726 (1964); Colombaro v.Colombaro, 54 Ala. App. 157, 306 So.2d 23 (1975). We find no abuse of discretion here.
Next, Mrs. Plaskett contends she should have received the home until she remarries or the son becomes self-supporting, all the household goods and furnishings, and half of the money in the Wolverine incentive plan. Mrs. Plaskett filed this appeal before the register divided the personal property, including the household goods and furnishings, automobiles, and the Wolverine incentive plan funds. As we have stated above, no order has been entered by the court adopting the decision of the register. In such state the matter is not appealable. See 27A C.J.S. Divorce § 157; 76 C.J.S. References §§ 193 et seq.
Insofar as the order to sell the home is concerned, we note that the division of property is also a matter vested in the sound judicial discretion of the trial court and will not be reversed on appeal absent palpable abuse. Segars v. Segars,334 So.2d 684 (Ala.Civ.App. 1976). A court may order the sale of the family home and divide the proceeds between the parties after the payment of the mortgage and family debts. Shell v.Shell, 48 Ala. App. 668, 267 So.2d 461, cert. denied, 289 Ala. 751, 267 So.2d 467 (1972); Rayburn v. Rayburn, 46 Ala. App. 552,246 So.2d 82 (1971). We find no palpable abuse here.
Mrs. Plaskett's final contention is that she was entitled to an award of attorney's fees. Such matter is within the discretion of the trial court. Smith v. Smith, 57 Ala. App. 615,330 So.2d 439 (1976); Pruett v. Pruett, 333 So.2d 580
(Ala.Civ.App. 1976). We find no error in this regard.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur. *Page 789