Charles M. Dickson, Jr., appeals from a final judgment in favor of the defendant, U-J Chevrolet Company, entered after anore tenus non-jury hearing in an action for *Page 965 
revocation of acceptance under the Uniform Commercial Code. We affirm.
The trial judge, Robert L. Byrd, Jr., stated the facts as follows in his order:
 "Mr. Dickson purchased a 1980 Chevrolet dump truck from U.J. Chevrolet on December 31, 1980. The sales price for the dump truck was $39,849.91. Dickson accepted delivery of the truck on January 6, 1981.
 "Within one week after accepting delivery of the truck, Mr. Dickson brought the vehicle to the U.J. Service Department and complained that the dump body on the truck was leaning to the right. The dump body on the 1980 truck is supported by a tandem spring assembly with a total 38,000 pound capacity. U.J. personnel determined that the spring on the right side had a 17,000 pound capacity and the spring on the left had a 19,000 pound limit. U.J. personnel ordered a new right side spring assembly direct from the Chevrolet Motor Division factory in Flint, Michigan, on January 14, 1981.
 "Despite the slight differentiation in the springs, Mr. Dickson used the truck in his dirt-hauling business and operated it while new spring parts were on order. The truck was driven 855 miles by Mr. Dickson while it was in his possession during a two week period of time after it was delivered to him on January 6, 1981. The truck was not dangerous to operate with the minor difference in the springs and the Court finds that there is no compelling reason that the dump truck could not have been used by Mr. Dickson in the condition it was originally delivered.
 "Mr. Dickson's attorney sent a letter to U.J. dated January 26, 1981 wherein Mr. Dickson attempted to reject or revoke acceptance of the 1980 dump truck, demanded a refund of the value paid, and demanded reimbursement of other incidental costs. Mr. Dickson returned the dump truck to the dealer by January 26, 1981.
 "In an effort to correct the existing spring problem as quickly as possible, on January 20, 1981, U.J. purchased a spring from a local company and installed it on the truck. This spring did not obviate the problem, and U.J. so advised Mr. Dickson, stating that it would still be necessary to install the spring ordered from the factory.
 "The spring parts that had been ordered from the Chevrolet factory on January 14, 1981 were received at the U.J. dealership on or around January 27, 1981. The parts were installed on the vehicle and the minor defect in the spring was fully corrected by or on about January 27, 1981. The replacement of the spring assembly was an uncomplicated job that took approximately one-half day to complete. The value of the repair was $606.00, of which amount $485.00 was attributable to the parts expense. The court finds that the cost of the replacement of the spring was nominal or de minimis in comparison to the $39,849.91 value of the dump truck.
 "After the repairs on the spring assembly were successfully completed by U.J., Mr. Dickson refused to retake possession of the truck.
 "The dump truck was driven on several different occasions during the spring of 1981 by U.J. personnel after the spring assembly was replaced. On each of these occasions the vehicle was found to be in excellent operating condition. The truck was ultimately sold to another purchaser in February of 1982, who used the dump truck in his dirt hauling business for 14 months and has not experienced any service problems with the spring assembly.
 "The Court finds that Mr. Dickson did not reject delivery of the 1980 truck but accepted delivery on January 6, 1981 and acceptance was made on the reasonable assumption that the minor non-conformity in the spring assembly would be seasonably cured after the required parts arrived from the Chevrolet factory. The Court finds that Mr. Dickson failed to prove that the value of the truck was substantially impaired by any defects in its condition. Ala. Code, § 7-2-608 (1) *Page 966 
(1975). The Court also finds that U.J. was not given an appropriate opportunity to cure the minor defect in the spring assembly prior to the time Mr. Dickson attempted to revoke acceptance of the truck, and that U.J. seasonably and timely cured the defect."
The issue presented for our review is whether the trial court's findings of fact are so clearly and palpably wrong or without supporting evidence that they should be reversed.Silverman v. Charmac, Inc., 414 So.2d 892, 894 (Ala. 1982).
The trial court properly found acceptance of the truck by Dickson. Under § 7-2-606, Code of Alabama 1975, acceptance occurs when the buyer:
 "(a) After a reasonable opportunity to inspect the goods, signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or
 "(b) Fails to make an effective rejection (subsection (1) of Section 7-2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or
 "(c) Does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him."
The evidence shows that Dickson used the truck in January 1981, and that he put over 800 miles on the truck. In fact, Dickson continued to use the truck while waiting for the new spring assembly to arrive. Thus, acceptance of the truck by Dickson was clearly shown. Rozmus v. Thompson Lincoln-MercuryCo., 209 Pa. Super. 120, 224 A.2d 782 (1966); Woods v. VanWallis Trailer Sales Co., 77 N.M. 121, 419 P.2d 964 (1967).
Because the trial court found that Dickson accepted, rather than rejected, the truck, he must meet the requirements of §7-2-608, Code of Alabama 1975, regarding revocation of the acceptance, if he is to recover. That section provides:
 "(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
 "(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
 "(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
 "(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
 "(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."
(Emphasis added.)
Thus, in order to revoke, Dickson must show that the nonconformity is a substantial impairment of the value of the truck. Furthermore, the seller has the right to seasonably cure the nonconformity if the buyer accepted it on the reasonable assumption that the nonconformity would be cured. Tiger MotorCompany v. McMurtry, 284 Ala. 283, 224 So.2d 638 (1969).
Whether there is substantial impairment of value is a question for the trier of fact. Shelton v. Duncan,385 So.2d 1329 (Ala.Civ.App. 1980). The trial court properly considered the cost and extensiveness of the repairs, the actual use and ability to use the truck, and the success of the repair in finding that there was no substantial impairment of the value of the dump truck. Fargo Machine Tool Co. v. Kearney andTrecker Corp., 428 F. Supp. 364 (E.D. Mich. 1977); McGilbray v.Schofield Winnebago, Inc., 221 Kan. 605, 561 P.2d 832 (1977);Keen v. Modern Trailer Sales, Inc., 40 Colo. App. 527,578 P.2d 668 (1978). *Page 967 
The evidence showed that the cost of replacing the spring was $606.00. This expense was nominal or de minimis in view of the $39,849 value of the dump truck. The evidence also showed that the replacement was a basic, uncomplicated repair that required less than one half day's labor to accomplish.
Despite the defect, Mr. Dickson used the vehicle in his dirt hauling business prior to the time he returned the truck for repair on January 21, 1981. Thus, the defect did not prevent the operation of the truck.
The evidence further reflected that the truck was subsequently sold and used by another buyer in his dirt hauling business after the repairs were completed. Based upon the above factors, the trial court could find that there was no substantial impairment of value.
Section 7-2-608 (1)(a), Code of Alabama 1975, addresses the seller's right to cure. This provision, in essence, states that a buyer "may revoke his acceptance . . . if he has accepted it . . . [o]n the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured."
U-J Chevrolet cured the defect shortly after the requisite parts were obtained from the General Motors factory. This court in Tiger Motor Company v. McMurtry, 284 Ala. 283, 224 So.2d 638
(1969), recognized that "under the terms of the Uniform Commercial Code, the seller has the right to attempt to `cure' any defects in the goods." U-J was notified of the defect on January 9, 1981, and by January 27, 1981, the defect was cured. Under the circumstances of this case, it cannot be disputed that U-J cured the nonconformity in the truck in such a manner and time as to prevent revocation of acceptance.
After reviewing the record in its entirety, we find that the evidence amply supports the trial court's finding that Dickson accepted the truck and did not properly revoke his acceptance.
Further, Dickson's claim for consequential damages in the form of loss of business was inappropriate as a matter of law and was properly dismissed by the trial court. The damages sought by Dickson are only available when the buyer rightfully rejects, or revokes acceptance, which was not done here. Cf., §7-2-711, Code of Alabama 1975. Accordingly, the judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.