834 F.2d 970
 9 Fed.R.Serv.3d 984, 5 UCC Rep.Serv.2d 106
 David L. SHAVERS and Sam David Shavers,
Plaintiffs-Appellees, Cross-Appellants,
v.
MASSEY-FERGUSON, INC., a corporation, and Massey Ferguson
Credit Corporation, a corporation,
Defendants-Appellants, Cross-Appellees.
MASSEY-FERGUSON CREDIT CORP., Plaintiff-Appellee,
v.
David L. SHAVERS, Sam David Shavers, and Virginia Shavers,
Defendants- Appellants.
 Nos. 86-7626, 87-7206.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 30, 1987.
Rehearing and Rehearing En Banc Denied Feb. 26, 1988.
 
 Lamar & McDorman, Robert S. Lamar, Jr., Birmingham, Ala., for Massey-ferguson.
 Whitesell, Morrow & Romine, P.C., Wesley Romine, Roger S. Morrow, Joel H. Pearson, Montgomery, Ala., for Shavers.
 Appeal from the United States District Court for the Northern District of Alabama.
 Appeals from the United States District Court for the Middle District of Alabama.
 Before HILL and EDMONDSON, Circuit Judges, and CARR*, District Judge.
 HILL, Circuit Judge:
 
 
 1
 * This case arises from the following facts: In 1979, a family of farmers named Shavers (the "Shavers") purchased a used Massey-Ferguson Model 2775 tractor (the "Tractor") from a local dealer, financing it via a retail installment contract and security agreement with Massey-Ferguson Credit Corporation ("MFCC"). The Shavers were told by officials of Massey-Ferguson, Inc. ("MFI") that the Tractor was guaranteed unconditionally for a period of two years. There appears to be no question that the Tractor was defective. The Shavers also purchased various items of accessory equipment for the Tractor (the "Accessories"), and other unrelated items of equipment (the "Other Equipment"). All of these items were financed by MFCC. The debt related to the Tractor and the Other Equipment was subsequently refinanced, although the extent to which this refinancing resulted in combining the debts is in dispute.
 
 
 2
 This appeal is consolidated from two cases in the district courts in Alabama.
 
 
 3
 The Shavers brought the first case in the Alabama state courts; it was subsequently removed to the United States District Court for the Northern District of Alabama. In that case, the Shavers sued MFI alleging breach of warranty, fraud, negligence, and wantonness based upon the unsatisfactory performance of the Tractor, and also sought damages for crop loss. In the same suit, the Shavers also sued MFCC, seeking to have all sales contracts, installment contracts and security agreements entered into between the Shavers and MFCC rescinded, cancelled and voided. The trial court granted MFI's and MFCC's motion for directed verdict as to the claims for negligence and wantonness. The jury awarded the Shavers a total of $81,518.46, allocated $59,174.77 as damages for "purchase price & finance charges & additional charges resulting from financing on 2775 tractor," and $22,518.46 as "total price & finance charge & additional charges associated with purchase" of the Accessories.[1] The trial judge entered judgment in the reduced amount of $32,465.04 in favor of the Shavers against MFI, and cancelled the Shavers' debt owed to MFCC on the Tractor and the Accessories. The effect of this judgment was to implement the jury's apparent intent to give the Shavers a recovery for the cost of the Tractor and the Accessories.
 
 
 4
 While the first case was still pending, MFCC filed suit in the United States District Court for the Middle District of Alabama, claiming damages of approximately $120,000 arising from nonpayment of amounts due on notes related to the sale of the Tractor, the Accessories, and the Other Equipment. (MFCC had previously obtained possession of the equipment via a consent order). The Shavers moved to dismiss this second suit, claiming that MFCC's claims were barred either by the doctrine of res judicata or for failure to raise this claim as a compulsory counter-claim in the first suit. The trial judge in the second suit granted the Shavers' motion in part and denied it in part. He concluded that MFCC's claims for debt on the Tractor and Accessories were barred by res judicata, but that claims for the debt on the Other Equipment were not a part of the dispute in the first suit, nor were the issues sufficiently related that these claims should have been raised by MFCC as compulsory counter-claims in the first suit.
 
 II
 
 5
 We find no reversible error by the trial judges in either of the two suits in the district courts, and we therefore affirm.
 
 
 6
 * The Shavers argue that the trial judge's action in the first suit gave MFI the benefit of a claim "in the nature of recoupment," which MFI never raised. We do not find this argument persuasive. Judge Propst entered a judgment which gave the Shavers the relief the jury intended. The Shavers acknowledge in their brief that, both before and after the trial of the first suit, Judge Propst told the parties he would frame the judgment so as to conform to the jury's intent. It would have been unjust and contrary to the jury's apparent intent for Judge Propst to have allowed the Shavers a "windfall," by cancelling their liability for the unrelated Other Equipment because of the malfunction of the Tractor.
 
 
 7
 We also agree with the trial court's decision in the second suit that only MFCC's claims for the debt on the Tractor and the Accessories, and not the claims for the debt on the Other Equipment, are barred by the first suit. The Shavers claim that we should find a bar against collection of the Other Equipment debt as well. Their best argument is that MFCC's claim for this debt was a compulsory counterclaim in the first suit, which MFCC lost by their failure to plead it in the first suit. Fed.R.Civ.P. 13(a).[2]
 
 
 8
 The compulsory counterclaim rule serves an important function in increasing the efficiency of the judicial process, by preventing unnecessarily duplicative trials. We are cautious in making any decision that might weaken this important rule. However, we agree with the district court in the second suit that it was merely coincidental that the note evidencing the debt for the Other Equipment was involved in the first suit.[3] We therefore conclude that the district court did not commit reversible error by holding that MFCC's claim in the second suit for the debt on the Other Equipment did not arise out of the same "transaction or occurrence" as the Shavers' claims in the first suit.
 
 B
 
 9
 MFI and MFCC argue on cross-appeal that there was error in the assessment of damages. Specifically, they contend that (1) the trial court erred in failing to charge the jury that the Shavers' damages should be reduced by the rental value of their use of the Tractor; (2) the trial court erred in charging the jury that they could award damages for loss of value of the Accessories, since the Shavers only claimed breach of warranty with respect to the Tractor; and (3) the verdict awarding damages for loss of value of the Accessories was not supported by any evidence, since the Shavers based their claim on having no use for the Accessories once the Tractor was unavailable, but presented no evidence that the fair market value of the Accessories had declined.
 
 
 10
 As to Massey-Ferguson's first assertion, MFI and MFCC argue that the Shavers' use of the Tractor was sufficient to constitute "special circumstances" under Ala.Code Section 7-2-714(2) (1975),[4] so that the rental value of the Shavers' use of the Tractor should act as a reduction of the Shavers' damages. However, we have not been made aware of any Alabama case holding that use of the goods by the buyer constitutes "special circumstances" warranting adjustment of the damages; nor has our own research led us to such a case. Accordingly, we conclude that there was no error in the district court's decision not to reduce the Shavers' damages for the value of their use of the Tractor.
 
 
 11
 As to the second assertion, MFI and MFCC contend that damages for the loss of value of the Accessories could only be awarded as consequential damages, but the jury charge did not require the jury to find the statutory prerequisites.[5]
 
 
 12
 We conclude that any error on this second assertion was harmless. MFI sold both the Tractor and the Accessories to the Shavers, and therefore was clearly in a position to know that the Tractor had to function for the Shavers to realize the value of the Accessories. The opportunities for the Shavers to "cover" were extremely limited. It would hardly be reasonable to require the Shavers to have obtained a second large tractor in order to use the Accessories; that would have been very expensive relative to the cost of the Accessories. The jury charge could have been improved, but we are not persuaded that this would have changed the result.
 
 
 13
 As to the third assertion, we do not decide the question since it was not raised until counsel for MFI and MFCC filed his motion to set aside the jury verdict, and was therefore not timely raised. Fed.R.Civ.P. 51; Ford v. United Gas Corp., 254 F.2d 817, 818 (5th Cir.1958). Even had the issue been preserved for appeal, we are not convinced that the verdict was error. The jury had before it evidence as to the value of the accessories before and after the problems with the Tractor. While MFI and MFCC are correct that better evidence could have been presented as to any change in the fair market value of the Accessories, as distinguished from the subjective value to the Shavers, we conclude that the jury had sufficient evidence upon which to base its verdict. See Riley v. Ford Motor Co., 442 F.2d 670, 674 (5th Cir.1971); Berkshire Mut. Ins. Co. v. Moffett, 378 F.2d 1007, 1011 (5th Cir.1967); Stone v. Echols, 351 So.2d 902, 903-04 (Ala.1977). Furthermore, MFCC regained possession of all the equipment, so it was in a position to realize the benefit of any fair market value that remained.
 
 
 14
 For the foregoing reasons, the opinions of the trial courts are
 
 
 15
 AFFIRMED.
 
 
 
 *
 Honorable George C. Carr, U.S. Distict Judge for the Middle District of Florida, sitting by designation
 
 
 [1]
 The itemization does not add to the stated total in the original jury verdict
 
 
 [2]
 Rule 13(a) provides that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."
 
 
 [3]
 The Shavers purchased the Other Equipment at various times during 1979 and early 1980. They purchased the Tractor under a Retail Installment Contract and Security Agreement dated 10/29/79, and purchased the Accessories under a Retail Installment Contract and Security Agreement dated 8/15/80. They then refinanced the Tractor and the Other Equipment (but not the Accessories) under a Renewal, Refinancing, and Security Agreement dated 8/25/81, which states that "the execution and delivery of this agreement shall not rescind or revoke the refinanced Contract(s) or affect in any way the rights and obligations thereunder except as expressly amended or revised herein." While the Shavers' complaint requested "[t]hat the sales contract and all installment contracts and security agreement entered into between Plaintiffs and Defendants be rescinded, cancelled, and voided," they only claimed breach of warranty for the Tractor; the jury and both of the trial judges appear to have clearly understood that the Other Equipment was not in issue in the first suit. The Renewal, Refinancing and Security Agreement covering the Other Equipment was entered into evidence in the first suit only because of the historical accident that Massey-Ferguson agreed to refinance the Tractor together with the Other Equipment
 
 
 [4]
 Section 7-2-714(2) provides that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount...."
 
 
 [5]
 Ala.Code Sec. 7-2-715(2) provides that "[c]onsequential damages resulting from the seller's breach include:
 (a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise...."