ON APPLICATION FOR REHEARING
This court's original opinion, dated January 17, 1992, is withdrawn and the following is substituted therefor:
On September 17, 1987, Ance and Alice Page purchased a new van from the Treadwell Ford automobile dealership (Treadwell), trading in their old car and financing the remainder of the van's $24,500 purchase price through Treadwell. At the *Page 40 
time of the purchase, the Pages received warranties from Ford Motor Company (Ford), which had manufactured the basic vehicle, and the Zimmer Corporation (Zimmer), which had installed various modifications transforming the vehicle into a "conversion van." Treadwell, however, disclaimed all express or implied warranties on its part.
Soon after their purchase the Pages discovered numerous problems with the van, finding a steady stream of leaks around the van's windshield and top and around its side and back doors. There was water damage to the interior. The Pages also discovered that, among other things, the motors controlling the passenger and driver side windows malfunctioned, rubber sealing around the back door had come loose, wall panels and a cabinet were broken, the television set and the interior lights would not work at the same time, the stereo speakers often did not work, molding around the television set was loose, the van rattled badly, the paint on the roof had faded, the gas gauge and the cruise control did not work, the front end was misaligned, and the van used three to five quarts of oil per month.
On a regular basis the Pages began taking the van for repairs by Treadwell, the authorized agent for warranty work, travelling some 80 miles round trip with another vehicle to drive home each time. On these occasions the van would stay in the shop for a minimum of two to three days, sometimes remaining there for up to two weeks. Once, when its roof was being repainted, the van remained in the shop for approximately six weeks. Eventually, many of the defects were repaired, but a number were not, with Treadwell indicating that there were certain problems that could not be corrected. The Pages attempted and failed to receive satisfaction through numerous letters and telephone conversations with Treadwell and Ford. In late 1987 the Pages gave notice to Treadwell of their desire to revoke acceptance of their purchase. Treadwell, however, refused to recognize the Pages' attempt at revocation.
On February 21, 1989, the Pages filed suit against Treadwell, Ford, and Zimmer. The complaint listed nine causes of action, including various allegations of fraud, breach of warranty, and unconscionability, as well as a demand for revocation under § 7-2-608, Ala. Code 1975. The case went to trial in March 1990. At the close of the Pages' case-in-chief, the trial court directed a verdict for the defendants as to all causes except for claims of breach of express and implied warranties against Ford and Zimmer and except as to the revocation claim against Treadwell. The warranty claims went to the jury. The issue of revocation was submitted to the jury pursuant to special interrogatories prepared by the court, which apparently treated the jury findings as "advisory verdicts" and reserved the issue to itself for final judgment.
On March 6, 1990, the jury returned a verdict in favor of Ford and Zimmer on the warranty claims. However, in its answers to the special interrogatories, the jury found that the requisite elements of the revocation claim against Treadwell had been met. The trial court received these findings and left the issue open for further consideration, ultimately holding the date on which the Pages had revoked their acceptance to be in October 1987. See § 7-2-608(2). The court then appointed an appraiser to determine the value of the van and, one year after the trial ended, entered a judgment for damages on the revocation claim in favor of the Pages in the amount of $7,500. Treadwell's post-trial motion for new trial was denied, as was the Pages' request for an attorney's fee pursuant to § 8-20-8, Ala. Code 1975.
The Pages appeal, and Treadwell cross-appeals. We affirm in part, reverse in part, and remand with instructions.
The Pages contend (1) that the trial court erred in directing verdicts for Treadwell as to breach of warranty, fraud, and unconscionability; (2) that the trial court should have awarded them an attorney's fee under § 8-20-8; and (3) that the trial court improperly considered the benefit they received from using the van after revocation and, as a result, awarded inadequate money *Page 41 
damages. On cross-appeal Treadwell contends (1) that the remedy of revocation should not be available to the Pages because, it says, § 7-2-608 confers upon a buyer the right to revoke acceptance only in instances of a seller's fraud or breach of warranty; and (2) that the award of damages to the Pages was inconsistent with the revocation judgment. We will address the parties' contentions in the order they logically present themselves.
The Pages first maintain that the trial court erred when it directed verdicts for Treadwell as to breach of warranty, fraud, and unconscionability.
Section 7-2-316, Ala. Code 1975, allows a seller to exclude or modify, through conspicuous language or by other clear means, the warranty on the goods it sells. The record indicates that at the time the Pages purchased the van, Treadwell issued to them three separate documents disclaiming on its part "all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose." These written disclaimers, which were signed by the Pages, were part of the sales documents introduced into evidence at trial. No evidence was offered that the disclaimers were inconspicuous or otherwise invalid. There was no evidence that Treadwell had extended a verbal or written warranty inconsistent with its disclaimers.
Motions for directed verdict test the sufficiency of the evidence and may properly be granted if there is a complete absence of proof on an issue material to a claim. Ford MotorCo. v. Phillips, 551 So.2d 992 (Ala. 1989). Because there was no evidence that Treadwell had issued any warranty that it had not properly and specifically disclaimed, we find that the trial court did not err when directing a verdict for Treadwell as to the claims for breach of warranty.
The Pages' fraud claim was predicated upon the alleged failure by Treadwell to disclose that the van had been vandalized prior to its being sold to them. The record reveals that during the time the van was parked in the dealer's display lot, a vent window had been broken by a vandal, who took a television set and CB microphone from the van. On another occasion something chipped the windshield. The window and windshield were replaced prior to the Pages' purchase, as were the television set and CB microphone. Testimony adduced at trial indicated that the problems the Pages experienced with the van were unrelated to damage caused by the vandalism. Moreover, there was no testimony indicating that Treadwell's salesperson had affirmatively represented to the Pages that the van had not been vandalized. At the time of their purchase, the Pages signed a "Retail Buyer's Order," which contained the following prominent disclaimer:
 "The purchaser of the vehicle described herein understands that it may have suffered damage during production, transit or while in the control and possession of the seller. There are no warranties of merchantability or fitness being made by the seller to the purchaser as to repairs of such damage."
In Planchard v. Dobbs Mobile Bay, Inc., 529 So.2d 942 (Ala. 1988), our supreme court held that a buyer's signing of a disclaimer provision identical to the one above precluded the buyer from maintaining an action for fraud or misrepresentation. Accordingly, we conclude that the trial court did not err when directing a verdict for Treadwell as to the Pages' claim of fraud.
We find no evidence in the record to indicate that Treadwell took advantage of the Pages' inferior bargaining posture at the time of the sale. Nor is there evidence suggesting that Treadwell's disclaimers were signed under patently unfair circumstances. Therefore, we hold that the trial court's directed verdict as to the Pages' claim for unconscionability was not in error.
The Pages next maintain that, pursuant to § 8-20-8, Ala. Code 1975, the trial court should have awarded them an attorney's fee predicated on the revocation judgment.
Section 8-20-8 is part of the Motor Vehicle Franchise Act. InTittle v. Steel City *Page 42 Oldsmobile GMC Truck, Inc., 544 So.2d 883, 887 (Ala. 1989), our supreme court wrote that the Act "deals almost exclusively with the rights and duties that exist between automobile dealers and manufacturers" but that the one provision of the Act "that arguably applies to consumers" is found at § 8-20-8. However, the court held that application of § 8-20-8 is limited to cases where a court of competent jurisdiction has determined that either a manufacturer or new motor vehicle dealer (or both) has breached an expressed or implied warranty. Because the Pages failed to show that Treadwell violated either an expressed or implied warranty, the trial court here did not err when denying the Pages an attorney's fee under § 8-20-8.
Section 7-2-608, Ala. Code 1975, provides, inter alia, that a buyer has a reasonable period of time to "revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him." See Tiger Motor Co. v. McMurtry,284 Ala. 283, 224 So.2d 638 (Ala. 1969). Treadwell contends on cross-appeal that the language of "nonconformity" in § 7-2-608
confers upon a buyer a right to revoke acceptance only in instances where there has been fraud or breach of warranty on the part of the seller. Consequently, Treadwell argues, the trial court in the instant case could not properly base revocation upon § 7-2-608, inasmuch as the court determined that there was no evidence that Treadwell had committed fraud or breach of warranty when it directed verdicts as to these issues.
This court, however, does not read § 7-2-608 so narrowly. While no case law in our jurisdiction has heretofore directly addressed the issue we are now confronted with, we adopt the reasoning expressed by the Supreme Court of Arizona in Seekingsv. Jimmy GMC of Tucson, Inc., 130 Ariz. 596, 638 P.2d 210
(Ariz. 1981). In interpreting an Arizona statute with language like that of § 7-2-608, the court in Seekings found that, had the drafters of such a statute meant for the remedy of revocation to apply only in cases of fraud or where a warranty is breached, they would have so stated expressly. Reasoning that a broader reading of the revocation statute provides for a more equitable allocation of benefits and burdens between parties to a sales contract, the Arizona court allowed a buyer to revoke acceptance of a mobile home following numerous unsuccessful efforts to cure defects, despite the mobile home seller's disclaimer of its own warranties. The Arizona court went on to state that "revocation may be available whenever goods fail to conform to a seller's representation of the goods if the nonconformity 'substantially impairs' the value of the goods to the buyer." Id., 638 P.2d at 216.
This court likewise concludes that § 7-2-608 should properly be viewed as affording a remedy in situations where a seller has successfully disclaimed its own warranties. To hold otherwise would be to place the risk of loss on the buyer and to find little meaningful obligation on the part of the seller, who receives substantial benefits from the sale of its goods.See Manning G. Warren, The Effect of Warranty Disclaimers onRevocation of Acceptance Under the Uniform Commercial Code, 37 Ala.L.Rev. 307 (1986) (discussion of Seekings and § 2-608 of the U.C.C.). Our interpretation of § 7-2-608 is also consistent with the principle that, when a buyer's remedy fails of its essential purpose, the buyer may resort to further remedies provided by the Commercial Code in order to gain the substantial value of the bargain. § 7-2-719, Ala. Code 1975. SeeVolkswagen of America, Inc. v. Dillard, 579 So.2d 1301 (Ala. 1991). Following jury verdicts in favor of Ford and Zimmer on the warranty claims, the Pages' remaining adequate remedy was provided by § 7-2-608.
We find that in order to revoke their acceptance, the Pages — once they had otherwise met the requirements of § 7-2-608 — were obligated to show only that the van's nonconformity substantially impaired its value to them, and that it was not necessary that they prove fraud or breach of warranty on the part of Treadwell.
Treadwell does not dispute that the Pages attempted to revoke their acceptance within a reasonable time. § 7-2-608(2). *Page 43 
Instead it maintains that the value of the defective van was not substantially impaired so as to permit a revocation of acceptance. § 7-2-608(1). However, the record shows that in October 1987, the date determined by the trial court to be the date of revocation, there were numerous problems with the van. The Pages had been obliged to make several long trips to have the van serviced and were left without use of the van for extended periods of time. Despite Treadwell's disclaimer of its own warranties, it had offered for sale to the Pages a new conversion van warranted by Ford and Zimmer, and the Pages were entitled to believe that they had bargained for a significantly trouble-free automobile whose defects could be cured within a reasonable time. However, after repeated attempts and prolonged inconvenience to the buyers, a number of defects remained. (Several of these problems persisted at the time of trial.) Under the circumstances it was not unreasonable for the Pages to decide that the van's defects were incurable and to seek legal recourse.
Whether there is substantial impairment of value is a question for the trier of fact. Dickson v. U-J Chevrolet Co.,454 So.2d 964 (Ala. 1984). There was clear evidence before the court in the present case that the van's nonconformity with what the Pages were entitled to believe they would receive — i.e., a reasonably reliable and defect-free new van — substantially impaired the value of a commercial unit for which the Pages had made a significant outlay of money. We conclude that the trial court was correct in finding that the Pages had met the requirements of § 7-2-608 in order to revoke their acceptance of the van.
Both parties object to elements of the trial court's money damage award. In its judgment awarding damages to the Pages on April 3, 1991, the court stated as follows:
 "The Court finds that the purchase price of the vehicle was approximately $24,500; that the present value is $10,500; that the current mileage is approximately 48,000 miles; that the mileage at the time of revocation was approximately 1,000 miles; that some of the diminution in value is attributable to the age and use of the vehicle and some is attributable to its defective condition; that 15 cents per mile is a reasonable figure for the use of the vehicle in its defective condition; and that Plaintiffs are entitled to, and are hereby awarded, judgment in the amount of $7,500."
The Pages contend that the court improperly considered the benefit they received from using the van after the October 1987 revocation when reducing their recovery of damages on the revocation judgment. Treadwell contends that the court's award of damages on the revocation judgment was inconsistent with the directed verdicts in its favor on the breach of warranty claims.
As for the Pages' contention, we note that once the Pages successfully revoked acceptance of the van in October 1987, they had the same rights and duties with regard to the van that they would have had had they rejected it before acceptance. § 7-2-608(3). At that point the Pages retained only a security interest for return of their purchase price. § 7-2-711(3), Ala. Code 1975. However, the record indicates that the Pages were still driving the van as of April 1991 and supports the court's finding that they had put some 47,000 miles on the van after revocation. Even though Treadwell did not give the Pages instructions with respect to the van after receiving their notice of revocation, the Pages' remedies under § 7-2-711 do not include the right to the beneficial use of the van. The Pages continued use of the van after a reasonable time at which they should have acted under § 7-2-604, Ala. Code 1975, was, therefore, technically "wrongful." § 7-2-602(2)(a), Ala. Code 1975. See Ex parte Stem, 571 So.2d 1112 (Ala. 1990).
There is no specific provision in this state's Commercial Code for an offset for a buyer's "wrongful" use of an automobile after revocation of acceptance. However, § 7-1-103, Ala. Code 1975, states that unless displaced by particular provisions of the Commercial Code, the principles of law and equity should supplement the Code. *Page 44 
The general rule is that where a buyer is entitled to revoke acceptance and elects to do so, the buyer shall thereafter be deemed to hold the goods as a bailee for the seller. Ex parteStem, 571 So.2d 1112. Under the circumstances of the instant case, we conclude that it was consistent with the principles of law and equity for the trial court to offset for the Pages' beneficial use of the van after revocation.
Treadwell maintains that an examination of the trial court's judgment reveals that the court erroneously based its damage award on the difference in the value of the van as warranted and the value of the van as delivered. The difference-in-value formula used by the court, Treadwell says, is the appropriate measure of damages for a breach of warranty claim and not for a claim of revocation of acceptance. See § 7-2-714(2), Ala. Code 1975. Because the court directed verdicts in favor of Treadwell on the Pages' claims for breach of warranty, Treadwell contends that the damage award is contrary to the law to be applied to the case.
Section 7-2-711 provides that a buyer who revokes acceptance of nonconforming goods may recover, in addition to any consideration paid on the contract, certain damages. Such damages do not include the difference-in-value amount available under § 7-2-714(2), but instead comprise incidental and consequential damages. § 7-2-715, Ala. Code 1975. See Dickson,454 So.2d 964. Incidental damages include expenses reasonably incurred in inspection, receipt, transportation, care, and custody of goods rightfully rejected. § 7-2-715(1). Consequential damages include any loss resulting from general or particular requirements and needs of which the seller, at the time of contracting, had reason to know and which could not reasonably be prevented by cover or otherwise. § 7-2-715(2). For instance, a buyer may recover for loss of use if the seller had knowledge of the buyer's intended use of the goods. SeeShavers v. Massey-Ferguson, Inc., 834 F.2d 970 (11th Cir. 1987).
After careful consideration of the arguments in Treadwell's application for rehearing, we have again thoroughly reviewed the record, and we now agree with Treadwell's contention that the trial court erroneously awarded damages based on a difference-in-value formula. Accordingly, this part of the trial court's judgment is reversed. We are unable to ascertain, however, whether the trial court determined that incidental and consequential damages were unavailable as a matter of law or because the Pages failed to sustain their burden of proof on these issues. We hold that such damages are available as a matter of law and remand to the trial court for a consideration of whether the Pages have sufficiently proved them.
In its application for rehearing Treadwell has, for the first time, requested that this court direct the trial court to order the Pages to return the van to Treadwell for a refund of any consideration paid. A seller should provide the buyer with instructions for the disposition of rightfully rejected goods within a "reasonable time." § 7-2-604. Heretofore, there has been an absence of any such instructions from Treadwell.
We hereby remand this cause with instructions to the trial court to determine whether Treadwell has provided instructions to the Pages within a reasonable time, to determine the appropriate disposition of the bailment, to determine the amount of consequential and incidental damages, if any, and to determine any appropriate offset in a manner consistent with our opinion.
The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING GRANTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur. *Page 45