565 S.E.2d 773

**Milton HERRING, Appellant/Respondent,**

**v.**

**HOME DEPOT, INC. and Deere & Company, Respondents/Appellants.**

**No. 3496.**

Court of Appeals of South Carolina.

Heard April 10, 2002.

Decided May 20, 2002.

Rehearing Denied June 19, 2002.

374

C. Steven Moskos, of North Charleston, for appellant/respondent.

M. Dawes Cooke, Jr., and Philip S. Ferderigos, both of Barnwell, Whaley, Patterson & Helms, of Charleston, for respondents/appellants.

GOOLSBY, J.

Milton Herring filed this action in magistrate's court asserting claims for revocation of acceptance, breach of warranty, violation of the Magnuson–Moss Warranty Act, and unfair trade practices against Home Depot, Inc., and Deere & Co. (Defendants), alleging a lawn mower he purchased was defective. The jury returned a verdict in Herring's favor on the claim for revocation of acceptance, but denied recovery on the breach of warranty claim. On appeal, the circuit court granted the Defendants a new trial on the ground the jury verdict

was inconsistent. Herring and the Defendants cross-appeal. We reverse.

## FACTS

On March 4, 1999, Herring purchased a 1999 Scotts Riding Mower at a Home Depot in Charleston County. The purchase price was $3,495.88. The mower was covered by a two-year, limited warranty issued by the manufacturer, Deere & Co. The limited warranty provided Deere would "repair or replace, at its option, any covered part which is found to be defective in material or workmanship during the applicable warranty term," and that warranty repairs had to be performed by an authorized repairman.

According to Herring, he advised the sales personnel at Home Depot that because of health problems, he needed an easy-to-ride mower that could cut his almost two-acre yard. Hip replacements in both hips made it impossible for Herring to use a push mower. According to Herring, a Home Depot salesperson advised him that the Scotts Riding Mower would be perfect for his needs.

The first few times Herring used the mower, he did not notice any problems. In July 1999, as Herring attempted to mow his yard, the mower made a loud noise, the engine smoked, and then it stopped running. Herring contacted Home Depot and later Deere. Deere directed Herring to take the mower to Whitesville Lawn and Farm Equipment, an authorized service center. Herring did so. Whitesville replaced the engine seal and returned the mower approximately two weeks later. When Herring picked up the mower, he noticed it rattled, vibrated, and smoked.

For several days, Herring tried unsuccessfully to speak to the service manager at Whitesville. Each time Herring called, the manager was either busy or out of the office. Within a few minutes of Herring's last attempt to call, when Whitesville told Herring the manager would not be in that day, Herring's wife was able to reach the manager by giving her maiden name to the person who answered the phone. When the manager was on the line, Herring's wife gave Herring the phone and Herring informed him the mower was still making noise. The manager stated he would call the

factory to see if it would authorize a replacement engine. A few days later, the manager called back and said he had a replacement engine and would install it. Herring took the mower back to Whitesville on July 27, 1999.

On July 29, 1999, when Herring picked up the mower, he noticed it was still making the same loud noise, notwithstanding Whitesville's claim to have replaced the engine. Herring later testified, "I didn't say anything to [Whitesville] because I knew it wouldn't do any good."

Herring showed the mower to another mechanic, Ken Gusta, the owner of Gusta Outdoor Power Equipment. Gusta replaced the engine oil but did not make any mechanical repairs. Approximately ten minutes after Gusta started the engine, smoke started pouring out of the engine cover, the engine wires caught fire and melted, and the engine died. Gusta advised Herring the mower had an electrical problem.

Herring called Home Depot and asked for a refund. Home Depot denied any responsibility for the mower and referred Herring to Whitesville. Herring told them he had already taken the mower to Whitesville twice but it was not repaired properly. In Herring's opinion, Whitesville misrepresented that it installed a new engine.

In January 2000, Herring filed this action in the Charleston County Small Claims Court against Defendants, asserting causes of action for (1) revocation of acceptance, (2) breach of implied and express warranties, (3) violation of the Magnuson–Moss Warranty Act, and (4) violation of the Unfair Trade Practices Act (UTPA). Herring further alleged nonconformities in the mower made it impossible to use for its intended purpose and Defendants "unreasonably and unfairly" refused to accept his return of the mower and give him a refund of the purchase price. Herring also alleged "Defendant John Deere has failed to correct the ... mower's defects after attempting numerous times to do so" and, although John Deere attempted to limit his rights to repair or replacement of any defective parts, "this exclusive remedy has failed of its essential purpose." Defendants' answer denied the claims and asserted nineteen defenses.

At trial, the jury awarded Herring $3,695.88 on his claim for revocation of acceptance.[1] The magistrate later reduced this amount to $3,495.88, the purchase price of the mower. Defendants appealed to the circuit court.

The circuit court ruled the jury verdict permitting revocation of acceptance without a finding of breach of warranty was inconsistent as a matter of law and reversed, ordering a new trial. Herring and the Defendants cross-appeal from this order.

## LAW/ANALYSIS

### I. Herring's Appeal

■ Herring argues the circuit court erred in granting a new trial based on an inconsistent jury verdict. We side with Herring.

■ Breach of warranty and revocation of acceptance are independent, discrete causes of action. In *General Motors Acceptance Corp. v. Anaya*,[2] the court explained, "[t]he theories 'are two distinct strands of buyer's remedies under the Code.' Although a buyer may pursue either or both, they are 'separate remedies treated in entirely different sections of the Code and they offer separate forms of relief.' "[3]

■ When an exclusive or limited warranty fails of its essential purpose, a party who purchases a product covered by such a warranty is not limited to an action for breach of warranty but may seek other remedies, including revocation of acceptance.[4] A warranty fails of its essential purpose if the seller is unwilling or unable to repair or replace the product or

---

1. According to the circuit court's order in this case, the amount of the jury verdict represented the cost of the lawnmower ($3,495.88) plus $200.00 "in incidental/consequential damages." Herring testified he spent "several hundred dollars" repairing his old lawn mower so that he could use it when the Deere mower quit working.

2. 103 N.M. 72, 703 P.2d 169 (1985).

3. 703 P.2d at 171 (citation omitted).

4. S.C.Code Ann. § 36–2–719(2) (1976).

if there is an unreasonable delay in the repair or replacement of the product.[5]

Section 36–2–608 [6] describes the elements of a cause of action for revocation of acceptance.

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

■ An action for breach of warranty requires the existence of an express or implied warranty as described in sections 36–2–313 and 36–2–314,[7] respectively, or an implied warranty of fitness for a particular purpose, as defined in section 36–2–315.[8]

■ Breach of warranty is an action affirming the contract.[9] In an action for breach of warranty, the buyer retains the goods.[10] Revocation of acceptance, on the other hand, re-

---

5. *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F.Supp. 1027 (D.S.C.1993).

6. S.C.Code Ann. § 36–2–608 (1976).

7. *Id.* §§ 36–2–313 to –314.

8. *Id.* § 36–2–315.

9. *Genetti v. Caterpillar, Inc.*, 261 Neb. 98, 621 N.W.2d 529 (2001).

10. *Griffith v. Latham Motors, Inc.*, 128 Idaho 356, 913 P.2d 572 (1996).

quires the return of the goods and cancellation of the terms of a contract.[11]

■■■ Additionally, the tests for a cause of action for breach of warranty differ from those for revocation of acceptance.

> When goods do not conform to a promise or an affirmation of fact made by a seller, or the goods do not conform to a description, sample, or model, then a seller has breached an express warranty. If the goods are not merchantable, then the seller has breached an implied warranty. These are objective tests.
>
> In contrast, to revoke acceptance, the goods must have a nonconformity that substantially impairs the value of the goods to the buyer. This is a subjective test.[12]

Other jurisdictions have held a finding of breach of warranty is not necessary to sustain an action for revocation of acceptance.[13] In *Griffith v. Latham Motors, Inc.*,[14] the Idaho Supreme Court specifically addressed whether a jury verdict permitting revocation of acceptance against a party was inconsistent with a jury finding that same party had not breached a warranty. The court concluded there was no inconsistency, finding "[w]hether an express or implied warranty has been breached is included in the revocation determination only in the sense that a breach of a warranty could substantially impair the value of the goods to the buyer. But the determinations each have a different standard." [15]

■■■ Because of the contradictory elements, if the facts sustain one cause of action, the other cannot be present. At least one court has noted that a verdict entitling plaintiff to

---

11. *Id.* at 577.

12. *Id.* (citations omitted).

13. *See, e.g., Page v. Dobbs Mobile Bay, Inc.*, 599 So.2d 38 (Ala.Civ.App. 1992) (finding plaintiff not required to prove breach of warranty to recover under theory of revocation of acceptance); *Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 638 P.2d 210 (1981); *Griffith*, 913 P.2d at 577.

14. 128 Idaho 356, 913 P.2d 572.

15. *Id.* at 577 (citation omitted).

recovery on both causes of action, as defendants argue was required in this case, would itself be inconsistent because a finding of one extinguishes the other.[16]

In this case, the jury properly recognized that Herring was not entitled to recover on both causes of action and only permitted him to recover on the action for revocation of acceptance.[17] There was no error in this verdict.

Accordingly, we find the circuit court erred in granting a new trial on the ground that a jury award for revocation of acceptance is inconsistent with a jury's denial of a recovery under a breach of warranty theory. We therefore reverse the circuit court's order and reinstate the jury's verdict.

## II. Defendants' Appeal

On appeal, Defendants contend the circuit court erred by granting a new trial because the remedy of revocation of acceptance is not a separate cause of action and by denying their motion for directed verdict on the grounds that (1) the evidence showed Herring purposely failed to provide a sufficient opportunity for Deere to repair or replace the mower and (2) there is no evidence the warranty failed of its essential purpose because the uncontroverted evidence showed the mower could be repaired.

## A.

In finding above that the circuit court erroneously reversed the jury verdict, we have disposed of defendant's argument

---

16. In *General Motors v. Anaya,* the court observed:

   There was substantial and persuasive evidence to support the jury's finding of liability under the Anayas' claim of revocation of acceptance. Consequently, *the additional finding of liability under breach of warranty by the jury is inconsistent* as a matter of law, and j.n.o.v. on damages for breach of warranty was correct.
   *Id.* at 172 (citations omitted).

17. The general verdict form did not require the jury to make a specific finding the warranty failed of its essential purpose. Defendants make a conclusory argument that Herring is not entitled to recover "unless there is a breach of warranty *and the warranty fails its essential purpose.*" (Emphasis added.) For the reasons discussed above, we disagree that Herring was also required to prove breach of warranty.

that the trial court erred in charging the jury as to both revocation of acceptance and breach of warranty.[18]

### B.

Regarding the Defendants' argument concerning the magistrate's denial of their motion for directed verdict, our review of this issue is precluded by the fact that the circuit court did not rule on it.[19]

**REVERSED.**

HEARN, C.J., and HOWARD, J. concur.

---

18. Nonetheless, we note that in *Adams v. Grant*, 292 S.C. 581, 358 S.E.2d 142 (Ct.App.1986), this court found the trial court did not err in submitting both causes of action to the jury. *See also* Official Comment, S.C.Code Ann. § 36–2–608 (1976).

19. To preserve an issue for review on appeal, a party must raise the issue and obtain a ruling. *Wilder Corp. v. Wilke,* 330 S.C. 71, 497 S.E.2d 731 (1998).